Commonwealth *v.* Tingle, Appellant.

Argued November 13, 1972.   Before JONES, C. J.,
EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MAN-
DERINO, JJ.

*Samuel Dashiell,* for appellant.

*Ronald I. Rosen,* Assistant District Attorney, with
him *Milton M. Stein,* Assistant District Attorney, *Rich-
ard A. Sprague,* First Assistant District Attorney, and
*Arlen Specter,* District Attorney, for Commonwealth,
appellee.

OPINION BY MR. JUSTICE ROBERTS, March 16, 1973:

Appellant Gilbert Tingle was tried nonjury in the
Court of Common Pleas of Philadelphia and found
guilty of second degree murder.   Post-trial motions
were denied and appellant was sentenced to six to fif-
teen years imprisonment.   We reverse.

Appellant's principal contention[1] is that the sup-
pression court erred in finding voluntary his confes-

---

[1] In view of our disposition we need not reach appellant's other
contention that the evidence was insufficient to support his convic-
tion of second degree murder.

sion secured by the police after some twenty-one and a half hours of interrogation.[2]

The challenged confession was secured by the police between appellant's warrantless arrest and arraignment, a period of some twenty-one and a half hours. The circumstances surrounding appellant's arrest and the lengthy delay before arraignment, as established by the Commonwealth's own witnesses, are as follows: Appellant was arrested at approximately 11:45 A.M. on June 27, 1971. He was immediately taken to the police station and handcuffed to a chair for the next twenty-one and a half hours. During that interim, spent in a "well-lit" room of modest dimensions, appellant was subjected to almost constant police interrogation. By the computation of the police appellant could have had no more than six hours of respite during this twenty-one and a half hour detention.

During the twenty-one and a half hour period of almost constant interrogation and surveillance only appellant's most basic needs were satisfied. Access was provided to a lavatory and appellant received three sandwiches and coffee. A statement was actually given by appellant at 5:45 P.M. on June 27, but the police were not satisfied with its contents and continued the interrogation. Finally, at 9:15 A.M. on June 28, a second statement, now challenged as involuntary, was secured from the appellant, and within minutes he was thereafter arraigned.

The issue presented is whether the twenty-one and a half hour delay between arrest and arraignment violates the clear mandate of Pa. R. Crim. P. 118: "When a defendant has been arrested without a warrant, he shall

---

[2] The Commonwealth does not argue, and the record would not support, the contention that the admission of this confession was "harmless error."

be taken *without unnecessary delay* before the proper issuing authority where a complaint shall be filed against him. . . ." (Emphasis supplied.)

This Court recently held in *Commonwealth v. Futch,* 447 Pa. 389, 394, 290 A. 2d 417, 419 (1972), that "all evidence obtained during 'unnecessary delay' " between arrest and arraignment is inadmissible *"except that [evidence] which . . . has no reasonable relationship to the delay whatsoever."* (Emphasis added.) In so holding this Court noted that the purpose of Rule 118 is to insure that the defendant will be afforded "without unnecessary delay" after arrest those protections and rights embodied in Rule 119 :[3] "(a) At the preliminary arraignment, the issuing authority *shall not question the defendant respecting the offense charged,* but shall forthwith *deliver a copy of the complaint to him.* The issuing authority shall also inform the defendant: (1) Of his *right to secure counsel* of his choice and his *right to assigned counsel* in accordance with Rule 318; (2) Of his *right to have a preliminary hearing* or, except as provided in these rules, to waive it; (3) *If the offense is bailable, of the amount of bail demanded* and the *types acceptable* as provided in these rules; and. . . ." Pa. R. Crim. P. 119 (emphasis added).

This Court in *Futch* made it clear ". . . that failure to comply with Rule 118[4] does not *ipso facto* render in-

---

[3] *Commonwealth v. Futch,* 447 Pa. 389, 394, 290 A. 2d 417, 419-20 (1972). See also Hall, Kamisar, LaFave, Israel, Modern Criminal Procedure (3d ed.) pp. 466-67 for a discussion of the purposes of the similarly worded F. R. Crim. P. 5(a).

[4] Rule 118, by its terms, applies only to warrantless arrests. Rule 116, which is applicable to arrests made pursuant to warrant, imposes the identical requirement (as found in Rule 118) that all arrestees be preliminarily arraigned "without unnecessary delay."

"When a defendant has been arrested, with a warrant, within the county where the warrant of arrest was issued, he shall be taken *without unnecessary delay* before the issuing authority whose

admissible evidence obtained by the police during the 'unnecessary delay' and that it is incumbent upon defendant to show *some prejudice* from the delay."[5] *Futch* did not, and we do not here, establish a per se rule that all evidence obtained during an unnecessary delay be excluded. It is only upon the defendant's showing of prejudice from the delay, i.e., a nexus between the delay and the challenged evidence that he is entitled to relief. In *Futch,* supra, the defendant waived counsel for a lineup after a twelve hour "unnecessary delay." Noting that the waiver of counsel form signed by defendant was "misleading", and the lineup itself of a "suggestive nature", this Court held evidence from the lineup to be inadmissible at trial. Id. at 395, 290 A. 2d at 420.

Chief Justice, then Judge BURGER, has offered the following guidelines for ascertaining "necessary delay" between arrest and arraignment: " 'Necessary delay can reasonably relate to time to administratively process an accused with booking, fingerprinting and other steps. ...' " *Adams v. United States,* 399 F. 2d 574, 579 (D.C. Cir. 1968) (concurring opinion) (quoted in *Commonwealth v. Futch,* 447 Pa. at 392, 290 A. 2d at 418).

Notwithstanding, the fact that here the twenty-one and a half hour detention and delay before arraignment was not for "administrative reasons", nor was it "directed to possible exculpation of the one arrested", the Commonwealth still insists that the delay was "necessary." Specifically the Commonwealth argues that since

name appears upon the warrant for preliminary arraignment in a court case or trial in a summary case." Pa. R. Crim. P. 116. (Emphasis added).

Thus, both Rules 116 and 118 contain the same post-arrest prohibition against "unnecessary delay" in preliminarily arraigning the defendant.

[5] *Futch,* supra at 393, 290 A. 2d at 419 (citations omitted) (emphasis and footnote added).

appellant was informed of his *Miranda*[6] warnings after his arrest the police were under no obligation to comply with Rule 118's mandate. Such a position is clearly contrary to *Commonwealth v. Futch,* supra, and the specific and mandatory language of Rule 118.

As we have previously noted, the very purpose of Rule 118 is to insure that "without unnecessary delay" after arrest, an accused is informed by an *officer of the court* of his right to counsel. The United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), was quite emphatic that the mere recitation of *Miranda* warnings did not obviate the duty *of the police* to promptly arraign an accused: "Our decision today does not indicate these rules [F. R. Crim. P. 5(a), which requires prompt arraignment] can be disregarded. When federal officials arrest an individual, they must as always comply with the dictates of the congressional legislation and cases thereunder. . . ." 384 U.S. at 463, n.32, 86 S. Ct. at 1622 n.32.[7]

We hold, as did the United States Supreme Court in *Miranda v. Arizona,* supra, that merely because an accused has been informed of his *Miranda* warnings the police are not thereby free to "disregard" Rule 118. The record in this case clearly demonstrates that the twenty-one and a half hour delay between arrest and arraignment was unnecessary and thus violative of Rule 118 and *Commonwealth v. Futch,* supra.

Nor can it be seriously disputed that the challenged confession was "reasonably related" to the "unnecessary delay." Id. at 394-96, 290 A. 2d at 419. By the

---

[6] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966).

[7] In *Commonwealth v. Futch,* supra, this Court noted the similarity between our Rule 118 and Federal Rule 5(a) and specifically adopted the federal approach of excluding evidence found to be the product of "unnecessary delay." Our result as in *Futch* involving our Rule 118 is in complete harmony with the United States Supreme Court treatment of Federal Rule 5(a) in *Miranda.*

police's own admission the statement appellant gave some six hours after his arrest was not "satisfactory;" and the interrogation continued for another fifteen hours. We must conclude that the challenged statement here, as the evidence in *Futch*, supra, was "reasonably related" to the "unnecessary delay" and thus inadmissible.

The judgment of sentence is reversed and the record remanded for a new trial.

---

CONCURRING OPINION BY MR. JUSTICE EAGEN:

I agree with the conclusion of Mr. Justice ROBERTS that the long delay between the arrest and the filing of the complaint in this case was "unnecessary" in the sense that term is used in Rule 118 of the Pennsylvania Rules of Criminal Procedure. I likewise agree that, under the circumstances of this case, Tingle's confession was "reasonably related" to the delay, and hence, evidence thereof should have been suppressed in the trial court. However, I cannot accept the rationale that the delay, without more, establishes this necessary relationship.

Initially, I must make it clear that I agree in principle with Rule 118 of the Pennsylvania Rules of Criminal Procedure. It is of utmost importance that an accused be taken promptly before an issuing authority. Mr. Justice FRANKFURTER explained the necessity for such action in *McNabb v. United States*, 318 U.S. 332, 63 S. Ct. 608 (1943), stating: "A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone prevent disregard of cherished liberties. Experience has therefore counseled that safeguards must be provided against the dan-

gers of the overzealous as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication. Legislation such as this, requiring that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguard—not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society. For this procedural requirement checks resort to those reprehensible practices known as the 'third degree' which, though universally rejected as indefensible, still find their way into use. It aims to avoid all the evil implications of secret interrogation of persons accused of crime. It reflects not a sentimental but a sturdy view of law enforcement. It outlaws easy but self-defeating ways in which brutality is substituted for brains as an instrument of crime detection." 318 U.S. at 343-44, 63 S. Ct. at 614-15.[1] Moreover, since this rule applies to warrantless arrests, it is imperative that the accused be taken promptly before an issuing authority for a judicial determination of probable cause for arrest and detention. Such a procedure acts as a barrier to abuses of the criminal process, such as dragnet arrests, and for lack of a better phrase, mere "fishing expeditions" by the authorities.

However, in determining if evidence of a confession is admissible at trial, it is my view the main inquiry is whether the confession was given voluntarily under the qualitative test of *Miranda v. Arizona*, 384 U.S. 436,

---

[1] *McNabb*, supra, was decided under the supervisory powers of the Supreme Court and not on constitutional grounds.

86 S. Ct. 1602 (1966), and the decisions of this Court following that landmark decision. If there is a delay between the arrest and the confession, this delay, in itself, does not render the confession involuntary. *The operative question is what occurred within the delay.*

Rule 118 is a mere procedural device, lacking in constitutional dimension. The impact of Justice ROBERTS' opinion, as I read it, is to attach to Rule 118 a judicial evidentiary exclusionary rule, and to hold that a violation of Rule 118 with the only consideration being *the amount of time* between the arrest and the confession, renders the confession inadmissible. In other words, no consideration is given to whether the confession is voluntary. *Miranda* teaches that a person accused of crime is entitled to certain basic and fundamental rights under the Fifth and Sixth Amendments to the Constitution, as applied to the states through the Fourteenth Amendment. *Miranda* also sets forth guidelines under which a determination can be made if an accused's "waiver" of his rights is constitutionally valid, and if a confession is voluntary and admissible in a judicial proceeding. To give Rule 118 the force and effect advocated by Mr. Justice ROBERTS is to preclude any consideration of the guidelines enunciated in *Miranda.*

My disagreement with the above approach can be seen from the following hypothetical. An individual is arrested without a warrant, taken to police headquarters and given full warning of his *Miranda* rights, which he knowingly, intelligently and voluntarily waives. He is then intermittently questioned by the police for a period of time, which may be construed as "unreasonable delay" under Rule 118, and confesses. Under the position espoused by Mr. Justice ROBERTS his confession would be inadmissible at trial, notwithstanding it was freely given and unquestionably met all of the constitu-

tional standards dictated by *Miranda*. Ironically, the result would be the exclusion of a confession which is freely given and constitutionally valid merely because of a violation of a procedural rule which was brought into existence to insure that confessions would be voluntary. The accused's constitutional rights have not been violated, the police have afforded the accused all the required protections so that his confession is a knowing, intelligent, and voluntary exercise of his free will; yet, the confession is excluded. I cannot reconcile this type of result with the general purposes of our criminal law. Additionally, its impact on the administration of justice in Pennsylvania gives me great concern.

While I believe the time of delay in presenting an accused to an issuing authority and the filing of a complaint should weigh heavily in considering whether a confession is voluntary and, therefore, admissible, I do not believe delay alone, exclusive of all other factors, is a reasonable basis for the exclusion of a confession.

Mr. Chief Justice JONES and Mr. Justice POMEROY join in this concurring opinion.