Commonwealth *v.* Cherry, Appellant.

202

Argued April 18, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Harold L. Randolph,* for appellant.

*Bonnie Brigance Leadbetter,* Assistant District Attorney, with her *David Richman,* Assistant District Attorney, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, July 2, 1974:

Appellant, David Cherry, was tried by a judge and jury and found guilty of murder in the first degree.

Post-trial motions were denied, and appellant was sentenced to life imprisonment in a state correctional institution. This appeal followed.

The facts surrounding this appeal are as follows: On the evening of April 22, 1971, at or about Midnight, two Philadelphia police officers, while patrolling the 1600 block of Wellington, heard a gunshot. They observed five men alight from an automobile and run down the street. A sixth man, Morrell Reed, staggered out of the automobile and stated "They did it; they did it." Three of the five were immediately apprehended by the officers, one of the three being appellant, David Cherry.

Appellant was arrested and taken to police headquarters, where he confessed to the homicide. Appellant filed a pre-trial motion to suppress his confession, which was denied by Judge DELLA PORTA. Appellant now argues that the court erred in failing to suppress his confession and cites *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), to support his proposition.

Appellant was originally arrested at or about Midnight on April 22, 1971, and was taken directly to police headquarters. When the police learned that the victim had died, appellant was transferred to the homicide division, where questioning began at 2:10 a.m., on April 23, 1971. After being advised of his *Miranda* rights, appellant orally admitted knowledge of the crime, but denied any complicity in it. The police, unsatisfied with this response, continued questioning appellant until 3:00 a.m., when they left him alone. He was questioned briefly at 4:50 a.m., was fed and allowed to use the restroom at 5:25 a.m., and then was left alone again until 9:15 a.m., at which time he consented to and was given a polygraph test. The test was conducted from 9:15 a.m., until 2:00 p.m., on April 23, 1971. At that time, appellant was told he

had failed the polygraph test and agreed to give a statement, the taking of which was concluded at 4:00 p.m., some fourteen hours after his arrest.

Our examination of this record leads us to the conclusion that appellant is correct. His confession must be suppressed as the product of an unnecessary delay between his arrest and his arraignment.

Since appellant was originally unwilling to admit his complicity in the crime, and did not do so until after he was told that he had failed the polygraph test, some twelve hours later, during which time he had been subjected to over six hours of questioning and lengthy period of isolation, we are convinced that appellant would not have changed his mind were it not for the events which transpired during the delay. The instant case is thus factually similar to *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973), where we stated: "Nor can it be seriously disputed that the challenged confession was 'reasonably related' to the unnecessary delay. . . . By the police's own admission the statement appellant gave some six hours after his arrest was not 'satisfactory' and the interrogation continued for another fifteen hours." At pages 246-247.

The Commonwealth also argues that even if the confession were related to the delay, it should be admitted because the delay was not an unnecessary one. In the words of the Commonwealth's brief:

"At the time appellant was taken into custody, the police had little knowledge of the facts. Morrell Reed, before he died, pointed in the direction of a group of men, and said 'They did it.' . . . Two guns were found but not on the person of any of the five. Narcotics were found on the person of the decedent. The six persons interviewed gave contradictory accounts of events. Appellant denied responsibility while others indicated that he was the killer. . . . Police did not know or have any reason to believe any of the persons

involved . . . so with different accounts, time was needed to 'get the facts straight!'

"Where initially, police do not have sufficient information to make a sensible determination as to whom to charge, and with what offenses, they must be given reasonable time for investigation. Frequently, particularly in homicide cases, the only means of investigation is talking with the persons involved. If police are forced to charge and arraign all suspects before they have an opportunity to get the facts straight, the result would be unfortunate indeed. . . ."

We specifically reject this contention. Rule 118█ of the Pennsylvania Rules of Criminal Procedure and our decision in *Futch, supra,* are specifically designed to put a stop to the practice of arresting an individual and holding him during a lengthy period while continuing the investigation before arraigning him. While it may be permissible to delay the arraignment of an arrested individual if he initially indicates a willingness to cooperate, in order to obtain information from him about co-suspects or other evidence so that such co-suspects or evidence might be speedily located while still in the vicinity, no such grounds can be claimed in the instant case. Appellant was originally unwilling to say more than that he had been present at the scene of the crime. His confession did not come until after the fourteen-hour delay and was, in fact, produced by that delay. Accordingly, his confession should have been suppressed. See *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974).

Judgment of sentence reversed. Case remanded to the Court of Common Pleas of Philadelphia for a new trial.

DISSENTING OPINION BY MR. JUSTICE POMEROY:

The Court again today, without any discussion, elevates to constitutional status and grants retroactive effect to a rule expressly adopted under this Court's supervisory powers as a means of regulating police conduct prior to trial. There is simply no jurisprudential reason or justification for giving to the exclusionary rule established in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) a retrospective application so as to control pre-trial conduct, such as that here involved, which took place months before our *Futch* decision.

For the reasons stated in my dissenting opinions in *Commonwealth v. Dixon*, 454 Pa. 444, 448, 311 A.2d 613, 615 (1973), and *Commonwealth v. Dutton*, 453 Pa. 547, 551, 307 A.2d 238, 240 (1973), and those advanced by Mr. Justice EAGEN in his concurring opinion in *Commonwealth v. Tingle*, 451 Pa. 241, 247, 301 A.2d 701, 704 (1973), I must register my emphatic dissent to the Court's mandate of a new trial in the present case.

Mr. Chief Justice JONES and Mr. Justice EAGEN join in this dissenting opinion.