Commonwealth *v.* Bradwell, Appellant.

36

Submitted June 18, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Stuart H. Schuman* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*John H. Isom, Mark Sendrow, David Richman,* and *Steven H. Goldblatt,* Assistant District Attorneys,

*Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., September 23, 1974:

The main issue in this appeal is whether the lower court should have suppressed appellant's confessions because they were obtained during a period of unnecessary delay after his arrest and before his preliminary arraignment.

In the early morning hours of January 25, 1972, a fire broke out in an apartment building in Philadelphia. Appellant, the custodian of the building, was arrested without a warrant by police in connection with the fire around 8:00 a.m. that same day.[1] Because appellant, at the time of his arrest, was visibly intoxicated and could not understand his *Miranda* [*Miranda v. Arizona,* 384 U.S. 436 (1966)] rights, he was placed in a cell at the West Detective Division. At 1:00 p.m., appellant was awakened and taken to a detention room where he was given a sandwich. Shortly thereafter, according to the police, he was warned of his constitutional rights and made an exculpatory statement. Between 2:45 p.m. and 3:45 p.m. appellant was not disturbed. At 4:05 p.m. appellant was again questioned by police and made another exculpatory statement which was reduced to writing. When the questioning ended at 5:00 p.m., appellant was given food and allowed to rest while handcuffed to a chair. There was testimony from police officers that they again warned appellant of his constitutional rights from 6:15 p.m. to 6:35 p.m. Appellant then made a formal exculpatory statement that began at 7:15 p.m. and lasted until 9:15 p.m. Afterwards, ap-

---

[1] Appellant does not now question the validity of his arrest and we must assume that it was made on probable cause.

pellant was transferred to the Police Administration Building for a polygraph test to evaluate the exculpatory statements he had made. At the Police Administration Building, appellant was given food and warned of his rights regarding the polygraph test. Between 11:50 p.m. and 12:05 a.m. of January 26, 1972, the polygraph test was administered to appellant. After the test was completed, Sergeant Gallagher, the administrator of the test, and Lieutenant McGinley, one of the officers who had been investigating the fire, discussed the results of the test. Lieutenant McGinley then entered the room where appellant was alone, still attached to the polygraph device. At that moment, appellant asked how he had done. Although Lieutenant McGinley knew that the results were inconclusive, he replied that he had no idea and that appellant himself should know how well he did. Appellant then asked what would happen to him. Lieutenant McGinley answered that he would be charged with arson and that the penalty for arson was twenty years. Lieutenant McGinley added that he felt no sympathy for appellant and that people had been pretty nice to him. Following those remarks, appellant told Lieutenant McGinley that he did not mean to hurt anybody. After making a complete oral confession to Lieutenant McGinley and another officer who entered the room, appellant signed a formal inculpatory statement which was completed by 4:30 a.m. on January 26, 1972. Appellant was finally taken for a preliminary arraignment at 6:40 a.m. on January 26, 1972. However, for reasons not apparent in the record, the arraignment was not held until 2:30 p.m., more than 30 hours after appellant's arrest.

After reviewing the record, we have come to the conclusion that this case is controlled by *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), and the incriminating statements made by appellant more than 16 hours after his arrest should have been

suppressed as having been obtained during a period of unnecessary delay prior to appellant's arraignment.[2]

Rule 118 (now Rule 130) of the Pennsylvania Rules of Criminal Procedure directs, *inter alia:* "When a defendant has been arrested without a warrant, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him." Our Supreme Court in *Commonwealth v. Futch,* supra at 394, 290 A.2d at 419, has construed Rule 118 as requiring that "all evidence obtained during 'unnecessary delay' except that which . . . has no reasonable relationship to the delay whatsoever" must be excluded. In *Futch,* a 14-hour delay between defendant's arrest and his presentment to the magistrate, during which time he was identified in a lineup, was held to be "unnecessary delay." Moreover, in *Futch,* the identifications obtained during the delay were found to be a product thereof because of the absence of counsel at the lineup which was also of a suggestive nature. Therefore, the applicable test in determining whether Rule 118 (now Rule 130) has been violated is: (1) whether the evidence obtained was prejudicial; (2) whether the delay was unnecessary; and (3) whether the incriminating evidence was reasonably related to the delay. *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974).

There can be no doubt that the oral and written incriminating statements made by appellant were prejudicial to his case. The evidence against appellant, except for the confessions, was entirely circumstantial, and at trial, appellant continued to assert his innocence. The first requirement of the test is clearly met.

---

[2] Because of our decision, we need not consider the issues of whether the confessions were voluntary or whether the warnings given were in compliance with *Miranda v. Arizona,* 384 U.S. 436 (1966). Nor will we consider any errors that allegedly occurred at trial.

The lower court held that the delay in arraigning appellant was necessary. First, it found that "any delay in bringing the defendant before a magistrate was the direct result of the defendant's self-inflicted intoxication." Had appellant's intoxication prevented his questioning by police for a major portion of the delay, we might well agree. However, the record reveals that appellant's drunkenness prevented questioning for only the first 5 hours. In the remaining 11 hours before appellant confessed, the police conducted a series of questioning sessions in which appellant continually asserted his innocence. The officer who first interrogated appellant at approximately 1:00 p.m. the day of the appellant's arrest testified that although appellant was hazy at that time, he responded to all of the questions asked of him. Furthermore, the officer testified that he believed that appellant at that time understood his constitutional rights and knew what was going on. A second officer,[3] who participated in the second interrogation session which occurred soon thereafter, testified that at 4:05 p.m. appellant was not thick tongued, nor were his eyes either bloodshot or glassy. There was also testimony that during the third period of questioning which started at 7:00 p.m. appellant was responsive to the questions and understood what was going on. While we agree that appellant must be held responsible for the first 5 hours of the delay, he cannot be considered responsible for the subsequent 11 hours of delay during which time the police were not prevented from questioning him.[4]

---

[3] The officer who first questioned appellant testified: "Sometimes when a fresh detective comes to the case, they [sic] can talk to a person better than the original detective he has been working with all day."

[4] Our Supreme Court has held a delay as short as 8 hours unnecessary under Rule 118. *Commonwealth v. Dutton*, 453 Pa. 547, 307 A.2d 238 (1973).

The suppression hearing court found that "a polygraph test is a necessary time delay as a form of investigation to determine the guilt or innocence of a suspect." While this may be true under certain circumstances, we cannot find that the polygraph test in this case was part of a "limited preliminary investigation into [an accused's] connection with the crime for which he was arrested, especially when it is directed to possible exculpation of the one arrested." *Commonwealth v. Futch,* supra at 392, 290 A.2d at 418, *quoting Adams v. United States,* 399 F.2d 574, 579 (D.C. Cir. 1968) (concurring opinion). Had the confession promptly followed a polygraph test that had been administered shortly after appellant's *first* denial of guilt, our decision might be different.

Furthermore, we find no support for the Commonwealth's argument that the delay was directed to the possible exoneration and release of appellant. When asked why it was necessary to begin questioning again so soon after the first interrogation session had ended, the officer in charge responded: "I didn't feel he was telling the truth." In conclusion, the record reflects a period of over 10 hours of intermittent questioning in which appellant steadfastly maintained his innocence. That delay which occurred before appellant was given the polygraph test was not necessary.

Having found that the delay was unnecessary, we move to the final question: were the incriminating statements related to the delay? As already mentioned, appellant did not orally implicate himself until he had been in custody of the police for over 16 hours. While in custody, appellant was placed in isolation, questioned on several occasions, and subjected to a polygraph test. It was only after this chain of events that appellant finally admitted guilt. It appears obvious to us that the incriminating statements were a product of the delay. *See Commonwealth v. Cherry,*

457 Pa. 201, 321 A.2d 611 (1974) (where defendant confessed only after repeated questioning and polygraph test) ; *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973) (where the challenged statement was made after continued interrogation); *compare Commonwealth v. Mathis,* 227 Pa. Superior Ct. 464, 324 A.2d 407 (1974) (where the confession was made immediately and without hesitation after questioning commenced).

We must also recognize that appellant was without the aid of counsel during the period of delay in which the incriminating evidence was obtained. Rule 118 (now Rule 130) requires that a defendant arrested without a warrant must be taken without unnecessary delay before a magistrate and immediately given a preliminary arraignment. At the preliminary arraignment, the magistrate shall inform the defendant *inter alia* "of his right to secure counsel of his choice and his right to be assigned counsel" and if the defendant desires to secure counsel, he shall be "given immediate and reasonable opportunity to do so." Pa. R. Crim. P. 140. In the present case, the suppression hearing court found that appellant waived his right to counsel. On the other hand, appellant testified that he asked the police for counsel but was told that none was available. Had Rule 118 been followed, appellant's request for counsel, if made, would have been honored. *See Commonwealth v. Futch,* supra. Under all the facts and circumstances presented by this case, we find that the incriminating statements made by appellant were related to the violation of Rule 118 and should have been suppressed.

Judgment of sentence reversed and a new trial granted.