400 A.2d 1258

**COMMONWEALTH of Pennsylvania**

v.

**James C. WILLIAMS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 11, 1979.

Decided April 18, 1979.

Rehearing Denied May 21, 1979.

592

Louis Lipschitz, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., William Turnoff, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

LARSEN, Justice.

On April 2, 1976, appellant was convicted of voluntary manslaughter and possession of an instrument of crime, following a jury trial. Post-verdict motions were denied; appellant was sentenced to three to six years imprisonment for the voluntary manslaughter conviction and a concurrent one to two years imprisonment for the conviction for possession of an instrument of crime. These appeals followed.[1]

Appellant challenges the trial court's denial of his motion to suppress a signed statement which was given by him to the police approximately twelve hours after his arrest. He

1. Appellant appealed the voluntary manslaughter judgment of sentence directly to this Court. The judgment of sentence for the possession offense was appealed to the Superior Court, which certified the appeal to this Court.

alleges that the incriminating statement was obtained in violation of Pa.R.Crim.P. Rule 130 [2] and this Court's decision in *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972) which held that evidence obtained during, and reasonably related to, an "unnecessary delay" between arrest and arraignment must be excluded.

Before evidence will be suppressed on the grounds of pre-arraignment delay, three conditions must be met: (1) the delay must be unnecessary; (2) the evidence must be reasonably related to the delay; and (3) the evidence must be prejudicial to the defendant. *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974).[3] In considering the applicability of these conditions to an incriminating statement made in the interim between arrest and arraignment, this Court has narrowed the relevant time frame for determining whether the statement is the illegal fruit of an "unnecessary delay" to the period between the arrest and the making of the statement. *Commonwealth v. Rowe,* 459 Pa. 163, 327 A.2d 358 (1974). This is because, "as we noted in *Futch,* if unnecessary delay *follows* the securing of a [incriminating statement], that evidence is not reasonably related to the subsequent delay. *See,* e. g., *United States v. Mitchell,* 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944) (further citation omitted). For as the Supreme Court stated in *Mitchell,* 'the illegality of [an accused's] detention does not retroactively change the circumstances under which he made the disclosures.' 322 U.S. at 70, 64 S.Ct. at 898." *Id.* at 168, 327 A.2d at 361.

Applying these principles on review, our responsibility is 'to determine whether the record supports the factual findings of the court below and the legitimacy of the

---

**2.** Rule 130 states: "When a defendant has been arrested without a warrant in a court case, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him and he shall be given an immediate preliminary arraignment."

**3.** The six-hour rule enunciated in *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977), effective May 15, 1977, is not applicable to this case.

inferences and legal conclusions drawn from those findings.' *Commonwealth v. Goodwin,* 460 Pa. 516, 521, 333 A.2d 892, 895 (1975).

If the suppression court has determined that the evidence is admissible, 'this Court will consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.' *Commonwealth v. Kichline,* 468 Pa. 265, 280, 361 A.2d 282, 290 (1976); see *Culombe v. Connecticut,* 367 U.S. 568, 604, 81 S.Ct. 1860, 1878, 6 L.Ed.2d 1037 (1961) (Opinion of Frankfurter, J.).

*Commonwealth v. Brown,* 473 Pa. 562, 566, 375 A.2d 1260, 1262 (1977).

The facts surrounding the statement in question, as found by the suppression court and supported by the record are as follows: On September 30, 1975, at 2:17 a. m., appellant telephoned the police informing them that his wife, Doris Williams, and a man she had been living with, Charles Lloyd, were dead. The police arrived at the address given to them by appellant and found appellant at the scene with the two bodies. Appellant was taken by the police to two hospitals for the treatment of a laceration on his right hand. Following his discharge from the second hospital, appellant was arrested at approximately 7:30 a. m. of the same day (September 30) and taken to homicide headquarters for questioning. The testimony of several doctors who treated appellant at the hospital, and of Detective Winston and Sergeant Gibbons who accompanied appellant to the hospitals, establishes that appellant was emotionally upset, nervous, highly agitated and distraught during this period of time. At 8:30 a. m., appellant was read his *Miranda* rights which he waived. However, because of his emotional condition appellant was not questioned at that time. His condition was continually observed by Detective Winston who testified that appellant appeared to be calming down at 10 a. m. (when he was given cigarettes) and calmed down even

more so at 12:40 p. m. (when he was given lunch, taken to the restroom and given a "nerve" pill which he requested).

At 3 p. m., appellant had finally calmed down to a state which would permit the police to question him. Detective Richardson again read appellant his rights which were again waived. In addition to waiving his rights, appellant stated: "When I'm good and ready I'll tell you. There's a thing behind it and I'm not ready to tell you, but when I'm ready I'm going to tell you." At this time, appellant was alert, normal and responsive. He talked for one and one-half hours about his personal background, never mentioning the incident before Detective Richardson ended the interrogation. Appellant was given dinner at 6 p. m. and another "nerve" pill at 6:30 p. m. At 7 p. m., Detective Richardson re-entered the room and asked appellant if he was ready to talk. Appellant proceeded to give the incriminating statement which was recorded by the police and then signed by appellant at approximately 9:45 p. m. Appellant was arraigned at 1:40 a. m.

■■ The suppression court held that, under these circumstances, the first seven and one-half hours of delay were directly attributable to appellant's emotional, unstable condition and thus constituted a *necessary* delay. We agree. The preliminary arraignment required by the Pennsylvania Rules of Criminal Procedure is a procedure designed to inform the accused of the nature of the charges against him and to protect the accused's right to counsel, right to bail and his right to a preliminary hearing. *See Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973) and Pa.R.Crim.P. Rule 140 (formerly Rule 119). The preliminary arraignment would be reduced to a meaningless ritual if the accused were to be arraigned at a time when his condition would significantly impair his comprehension of the nature of the charges and his understanding of his rights. Therefore, we hold that a period of delay attributable to an accused's impaired mental or physical condition, which condition renders him

incapable of benefiting from the protections the preliminary arraignment was designed to afford, is necessary, and such period is to be excluded when determining whether a statement was obtained as a result of an "unnecessary delay." We note that, in similar circumstances, the Superior Court has reached this same conclusion. *Commonwealth v. Bradwell,* 231 Pa.Super. 35, 326 A.2d 887 (1974) (period of delay caused by intoxication of accused excluded from calculation of period of unnecessary delay).

Having excluded the seven and one-half hour period (i. e., from arrest at 7:30 a. m. to 3 p. m., when appellant was stable enough to be questioned) from the determination of the admissibility of the statement, we must examine the remaining four-hour period between 3 p. m. and 7 p. m. (when appellant began to give the incriminating statement) to determine if that delay was necessary and, if not, to determine if the statement was reasonably related to the delay. *Commonwealth v. Williams, supra.* (It is conceded that the third prong of the *Williams* test, that the evidence obtained during the delay be prejudicial, has been met.)

■ For the sake of argument, we assume, without deciding, that the four-hour delay was unnecessary.[4] However, we find that the statement was not reasonably related to the four-hour delay. Appellant informed police at 3 p. m. that he would talk about the incident, but first would prefer to give the police "background" information. He spoke until 4:30 p. m., never mentioning the incident, and was then left alone until 6 p. m. when he was given dinner. Detective Richardson returned at 7 p. m. and asked appellant if he

4. In *Commonwealth v. Cherry,* 457 Pa. 201, 321 A.2d 611 (1974), we suggested that arraignment delays *might* be necessary where the suspect *initially indicates a willingness to cooperate, in order to* permit the police to obtain information from co-suspects or to locate evidence in the vicinity. This was dictum, however, as Cherry had been unwilling to cooperate. *See also Commonwealth v. Johnson,* 459 Pa. 171, 327 A.2d 618 (1974). Given our resolution, *infra,* of the second element of the *Williams* test, we need not decide whether the four-hour delay was necessary.

were ready to talk about the incident. The appellant replied with the incriminating statement. Under these circumstances, the suppression court properly refused to suppress the statement since it was given as a result of appellant's decision at 3 p. m. to talk when ready, and was not in any way related to the four-hour delay.[5]

Judgments of sentence affirmed.

NIX, J., concurred in the result.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joins.

ROBERTS, Justice, dissenting.

The majority concludes that appellant's inculpatory statement was not the product of unnecessary delay between arrest and arraignment, and was knowingly and voluntarily given in compliance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). I dissent on both grounds.

This Court has consistently held that, other than time required for administrative processing of the accused, all delay between arrest and arraignment is unnecessary. See, e. g., *Commonwealth v. Eaddy,* 472 Pa. 409, 372 A.2d 759 (1977); *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974). Nonetheless, the majority today concludes that because appellant was in a very emotional condition and did not respond to the initial police questioning in a coherent fashion, the first seven and one half hours of delay between arrest and arraignment was necessary. The majority prem-

---

5. Appellant also contends 1) that the statement was involuntary and not the result of a knowing and intelligent waiver of his rights; 2) that the evidence is insufficient as a matter of law to sustain a conviction for voluntary manslaughter; and 3) that trial counsel was ineffective for failing to request specific points for charge on certain defenses of justification. We have reviewed the record and find these issues to be without merit.

ises this condition upon an unwarranted assumption that there is no purpose in providing an accused with a speedy preliminary arraignment when his emotional condition renders him according to the majority "incapable of benefitting from the protections the preliminary arraignment was designed to afford." At 1260.

The very purpose of a preliminary arraignment is to insure that the rights of an accused are protected. At the arraignment the accused is informed by a neutral judicial officer of the nature of the charges lodged against him and also advised of his rights to counsel, bail and a preliminary hearing. See Pa.R.Crim.P. 140. Additionally, where, as here, the accused has not been arrested pursuant to a warrant, the preliminary arraignment serves as the forum where an independent review of the facts alleged to provide probable cause is made by a detached and neutral magistrate. *Commonwealth v. Eaddy,* supra. See *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

The record clearly reveals that from 7:30 a. m. until 3:00 p. m., police did not provide for appellant's arraignment. Appellant's right to a prompt preliminary arraignment cannot be compromised as it was here merely because police were unable to interrogate him or obtain a confession. Indeed, the more distraught an accused may be, the more a prompt preliminary arraignment is necessary to insure that the accused's rights are protected. It must therefore be concluded that the first seven and one half hours of delay were unnecessary.

The Commonwealth has failed to justify any portion of the entire eleven and one half hour delay between appellant's arrest and the obtaining of his inculpatory statement. During the interrogation that began at 3:00 p. m., seven and one half hours after his warrantless arrest and after police had determined appellant had "calmed down" and become "more coherent," appellant told police he would tell them about the alleged homicides when he was ready. This was

in no sense a waiver of his right to a prompt arraignment. Nevertheless, police kept appellant in the same interview room for an additional four hours until 7:00 p. m. when, in response to police inquiries, appellant "said he was ready" and began his inculpatory statement.

It is obvious that there was no purpose for the entire eleven and one half hour delay other than to obtain a confession. Moreover, it is beyond doubt that the incriminating statement that police eventually obtained resulted from the eleven and one half hour delay. See *Commonwealth v. Johnson,* 459 Pa. 171, 327 A.2d 618 (1974). Appellant's statement was therefore inadmissible into evidence. This ground alone mandates reversal and a remand for a new trial.

The majority also concludes that appellant knowingly and voluntarily waived his rights under *Miranda,* even though shortly before police informed appellant of his rights, they had, without medical supervision, administered appellant "nerve pills," at appellant's request. "[T]he defendant's physical and psychological state" is a factor which must be considered in assessing a waiver of rights under *Miranda. Commonwealth v. Walker,* 470 Pa. 534, 538, 368 A.2d 1284, 1287 (1977), quoting *Commonwealth v. Starkes,* 461 Pa. 178, 184–85, 335 A.2d 698, 701 (1975). See generally, Kamisar, *Brewer v. Williams, Massiah, and Miranda: What is Interrogation? When Does it Matter?*, 67 Geo.L.J. 1, 70 (1978). On this record, where appellant's purported waiver of *Miranda* rights followed his ingestion of "nerve pills" in the presence and under the direction of police officers, and the record does not reveal the effect of the pills upon appellant's ability to intentionally, knowingly, and voluntarily relinquish his rights under *Miranda,* I would suppress appellant's statement.

I dissent.

MANDERINO, J., joins in this dissenting opinion.