540 A.2d 537

COMMONWEALTH of Pennsylvania, Appellant,

v.

Terrence McCRACKEN, Jr.

COMMONWEALTH of Pennsylvania

v.

Terrence McCRACKEN, Jr., Appellant.

Superior Court of Pennsylvania.

Argued Sept. 16, 1987.

Filed March 1, 1988.

Reargument Denied May 12, 1988.

Dennis C. McAndrews, Assistant District Attorney, Wayne, for Com., appellant (at 318PHL87) and appellee (at 777PHL87).

John G. McDougall, Philadelphia, for appellant (at 777PHL87) and appellee (at 318PHL87).

Before McEWEN, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

These are cross-appeals from the order below that (1) granted appellee and cross-appellant Terrence McCracken a

new trial, and (2) directed that McCracken's counsel "shall be available as a witness at the new trial ... and shall not represent [McCracken] at the new trial." Appellant, the Commonwealth, contends that the court erred in granting McCracken a new trial because the evidence upon which the court's order was based (1) was inadmissible hearsay, and (2) did not fulfill the legal standards governing after-discovered evidence. Cross-appellant McCracken contends that the court erred in ordering trial counsel not to represent him at the new trial. For the reasons that follow, we find that the evidence introduced at the after-discovered evidence hearing (1) was admissible under the declaration against penal interest exception to the hearsay proscription, but (2) did not warrant the granting of a new trial under the standard governing after-discovered evidence. Accordingly, we reverse the court's order granting McCracken a new trial, reinstate the jury verdict, and remand the case for sentencing. Because we reverse the order granting a new trial, we need not address cross-appellant's contention regarding the propriety of the court's order directing present counsel not to represent McCracken at his new trial.

On October 25, 1983, following a jury trial, appellee Terrence McCracken was found guilty of murder in the second degree, two counts of robbery, and one count of criminal conspiracy. Appellee filed post-verdict motions in four stages: Motion for New Trial and/or Arrest of Judgment, Motion for New Trial based on After–Discovered Evidence, Amendment to Motion for New Trial and/or Arrest of Judgment, and Supplemental Post Verdict Motion for New Trial Based on After–Discovered Evidence. The trial court heard extensive testimony on the post-verdict motions on numerous occasions between April 6, 1984 and September 25, 1986. On January 16, 1987, the court granted appellee a new trial based on after-discovered evidence, and denied appellee's other post-verdict motions. This Commonwealth appeal followed.

In an Opinion dated March 13, 1987, the trial court made clear that the sole basis for its granting a new trial was the

testimony of appellee's counsel, John G. McDougall. Trial Court Opinion at 10–11. McDougall testified that, after appellee's trial, appellee's alleged co-conspirators, William Verdekal and John Robert Turcotte, had made statements to McDougall that both implicated themselves in the robbery and murder and exonerated McCracken. The court concluded that (1) the statements that Verdekal and Turcotte made to McDougall were declarations against penal interest, and were thus admissible as exceptions to the hearsay rule; and (2) McDougall's testimony met all of the requirements governing after-discovered evidence. *See id.* at 10–12. The Commonwealth challenges each of these conclusions, contending that (1) the statements made to McDougall did not fall within the declaration against penal interest exception to the hearsay rule; and (2) even if the testimony were admissible, it is legally insufficient to meet the established test governing after-discovered evidence. We shall consider these contentions seriatim.

## I. HEARSAY CLAIM

■ We note, preliminarily, that "[i]t is universally agreed that hearsay may not be received unless the declarant is unavailable as a witness." *Commonwealth v. Pompey,* 248 Pa. Superior Ct. 410, 414, 375 A.2d 163, 165 (1977). *Cf. Commonwealth v. Brinkley,* 505 Pa. 442, 453, 480 A.2d 980, 986 (1984); *Commonwealth v. Colon,* 461 Pa. 577, 583, 337 A.2d 554, 557 (1975), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976). Here, the Commonwealth concedes that John Robert Turcotte was unavailable, as he stated his intention to refuse to testify pursuant to his fifth amendment privilege against self-incrimination. The parties agree, however, that William Verdekal was available to testify, and, in fact, *did* testify during post-trial proceedings. Brief for Appellant at 19; Brief for Appellee at 8. Accordingly, McDougall's testimony regarding statements made by Verdekal is inadmissible, and we must limit our review to a consideration of the statements that Turcotte

94

made to McDougall.[1]

In *Commonwealth v. Anderson,* 501 Pa. 275, 461 A.2d 208 (1983), our Supreme Court restated the law governing the admissibility of statements that are alleged to be declarations against penal interest:

> In *Commonwealth v. Colon,* 461 Pa. 577, 337 A.2d 554 (1975), this Court recognized the "declaration against penal interest" exception to the hearsay rule, but noted that "it is not the statement that must be against interest, but the *fact stated.*" 461 Pa. at 583–84, 337 A.2d 554, quoting Wigmore, 5 Wigmore, Evidence § 1462, at 337. Accordingly, we held that "the fact stated in that portion of Hernandez's [Colon's accomplice] confession which exculpated any possible accomplices was not against interest and hence that portion was inadmissible." 461 Pa. at 584, 337 A.2d 554. Furthermore, that portion of Hernandez's statement which did state facts against penal interest (*i.e.,* that Hernandez committed the crime) was deemed inadmissible because it was irrelevant to the case. *Id.,* 461 Pa. at 585, 337 A.2d 554. In *Colon,* the prosecution had proceeded on an accomplice theory, *i.e.,* that both Hernandez and Colon had acted in concert to commit the burglary/homicide, "[t]hus Hernandez's statement admitting his role in the crime was not inconsistent with the Commonwealth's theory of the crime. As such, his confession did not meet the test of relevancy because it would not tend to make the inference that Colon did not participate in the crime more likely." *Id.,* 461 Pa. at 585, 337 A.2d 554. *See also Commonwealth v. Garland,* [475 Pa. 389, 380 A.2d 777 (1977)].

---

1. We emphasize that the trial court granted a new trial based solely on the testimony of McDougall, and not on the independent post-trial testimony of Verdekal. *See* Trial Court Opinion at 11 ("We concluded that *only* the testimony of John G. McDougall, Esq., met the after-discovered evidence and reliability tests. . . ."). McCracken has not challenged the court's decision to limit the basis of its ruling to McDougall's testimony alone. Accordingly, we need not determine whether Verdekal's testimony was of such a nature as to warrant the granting of a new trial.

*Id.*, 501 Pa. at 289, 461 A.2d at 215. Thus, under *Anderson* and *Colon,* we first must distinguish between those parts of the out-of-court statement that *inculpate* the declarant and those parts that merely *exculpate* another person. Secondly, we must determine whether the portions of the statement that are inculpatory are *relevant* to the case at bar.

We have carefully reviewed McDougall's testimony from the April 11, 1984 after-discovered evidence hearing. The portions of Turcotte's statement, as reported by McDougall, which might tend either to exculpate McCracken or inculpate Turcotte, are the following:

> THE WITNESS [McDougall]: ... John Robert Turcotte indicated he wanted to talk to me about Terry [McCracken].... He said "he [McCracken] is looking bad to me. I think he is badly depressed and I am concerned."

> And Turcotte said, "I don't know if the kid is going to make it. I have one life on my conscience. I don't want another." He went on to testify—excuse me—state to me that Terry had not done anything but Turcotte wanted to help him out but did not want to stick his head into a noose....

> \*  \*  \*  \*  \*  \*

> [Turcotte said] "I want to help Terry. I don't want to stick my neck in a noose. He didn't do it. We both know that."

N.T. April 11, 1984 at 23–25.

> THE WITNESS [McDougall]: Turcotte called me again in my office on the telephone sometime in the month of December....

> \*  \*  \*  \*  \*  \*

> [Turcotte said] "I will give a statement to the District Attorney's office."

> \*  \*  \*  \*  \*  \*

> "Indicating all that I know in my part in the homicide...."

> \*  \*  \*  \*  \*  \*

I received later calls from Mr. Turcotte....

\*    \*    \*    \*    \*    \*

... John Turcotte said, "I want to clear Terry. I don't want to stick my neck in a noose." ...

... I asked him, "Would you plead guilty?"

\*    \*    \*    \*    \*    \*

"Would you plead guilty to homicide and all of the robberies with which you have been charged in return for a single sentence of life imprisonment?" ... He said, "Yes."

\*    \*    \*    \*    \*    \*

*Id.* at 27–29.

THE WITNESS [McDougall]: One night I was home and it had to be within 9:30 and 10:00 o'clock and I received a call from John Robert Turcotte from the Prison. He was inquiring as to the acceptability [of Turcotte's pleading guilty in return for a sentence of life imprisonment] again.

\*    \*    \*    \*    \*    \*

... I said to John that I had respected what he was doing but that in pleading guilty ... there would have to be some factual representation from him in order to substantiate the plea of guilty.

John replied—

\*    \*    \*    \*    \*    \*

[that] He had been doing $6 or $700 worth of coke and methamphetamine around the period of the commission of the crime. That he had been sleeping only 20 hours a week. That he remembers the whole incident. This was our conversation on the deli killing. "I remember the whole thing. It was like a dream. I was so stoned but I can't remember the man's face. The gun went off accidentally."

*Id.* at 29–31.

■ The bulk of Turcotte's communication to McDougall involves broad assertions that McCracken did not commit

the robberies and homicide. These portions are clearly inadmissible as they are not declarations against Turcotte's penal interest. *See, e.g., Commonwealth v. Anderson, supra; Commonwealth v. Colon, supra.*

█ The more troublesome portion of Turcotte's statement is his assertion that, "I remember the whole thing. It was like a dream. I was so stoned but I can't remember the man's face. The gun went off accidentally." This statement was clearly against Turcotte's penal interest. *See Commonwealth v. Weaver,* 274 Pa. Superior Ct. 593, 603, 418 A.2d 565, 570 (1980) (statement is against penal interest if it admits facts revealing participation in crime) (citations omitted). Moreover, unlike the situations presented in *Anderson* and *Colon,* we cannot conclude that Turcotte's admission was irrelevant to the case against McCracken.

In both *Commonwealth v. Anderson, supra,* and *Commonwealth v. Colon, supra,* the prosecution proceeded under an accomplice theory, alleging that the co-defendants were present and *acted together* during the commission of the crime. *See Commonwealth v. Anderson, supra* 501 Pa. at 279–80, 461 A.2d at 210 (evidence demonstrated that three men entered residence together; murder, robbery, and related offenses committed thereafter); *Commonwealth v. Colon, supra* 461 Pa. at 580, 585, 337 A.2d at 556, 558 (evidence demonstrated that co-defendants acted in concert in committing murder and burglary). Thus, in both cases, the inculpatory part of the co-defendant's statement—admitting that co-defendant's presence and participation in the crime—was consistent with the Commonwealth's theory of prosecution. Accordingly, as the *Colon* court recognized, the co-defendant's "confession did not meet the test of relevancy because it would not tend to make the inference that [the accused] did not participate in the crime more likely." *Commonwealth v. Colon, supra,* 461 Pa. at 585, 337 A.2d at 558. *See also Commonwealth v. Anderson, supra,* 501 Pa. at 289, 461 A.2d at 215.

Here, the evidence introduced at trial, as summarized by the trial court, indicated that

a man entered Kelly's Deli with a cover over his face and armed with a handgun. The man forced the owner, her daughter, and two (2) customers into a walk-in refrigerator. Thereafter, three (3) customers came in and the man forced the three (3) of them at gunpoint to the rear room of the Deli. A fourth customer, Charles Johnston, came in and was shot. The man, after taking money from the cash register, left the Deli. As he was leaving the Deli he was observed by two (2) customers who were about to enter the Deli. None of the people in the Deli or about to enter it were able to identify Defendant as the man who committed the robbery and shooting. All of them gave descriptions of the man and what he was wearing.

About an hour or so after the robbery and shooting Officer James Clifton saw Defendant standing in the street. The clothes that Defendant was wearing, except his hat, met the description of that given to police by the witnesses and the Defendant also met the description. The hat Defendant was wearing when Officer Clifton saw him had a brim. All witnesses had indicated that the man who committed the crimes wore a dark knit hat.

Defendant agreed to the performance of a gunshot residue test which was performed. Also found in Defendant's home, among other things, was a dark knit cap.

At the trial the person who performed the gunshot residue test testified that in his opinion there was gunshot residue on Defendant's left hand.

One (1) witness, Michael Aldridge, was the only witness who identified Defendant. He testified that he saw the Defendant enter and leave the Deli. Aldridge has known Defendant for years and had gone to school with him. When questioned shortly after the incident he said he did not recognize the person he saw enter and leave the store.

On March 21, 1983 (three days after the incident) Aldridge gave another statement to the police. In that statement he stated that Defendant was the person that he saw enter and leave the Deli.

On April 7, 1983 (about three weeks after the Kelly's Deli incident) John Robert Turcotte, Jr. and William V. Verdekal were arrested in the Borough of Clifton Heights, Delaware County, Pennsylvania during the commission of a robbery. Turcotte had a handgun and tests on the handgun indicated that the bullet that killed Charles Johnston had been fired from the handgun that was in Turcotte's possession.

The Commonwealth connected Defendant with Turcotte and Verdekal by testimony that Defendant was a helper of Turcotte's in Verdekal's furniture delivery operation just before the Christmas holidays.

The Commonwealth charged Defendant, Verdekal and Turcotte in the Kelly's Deli case. The cases were severed for trial. Turcotte would fit the description that was given by witnesses of the man who committed the robbery and shooting at Kelly's Deli.

The defense was alibi and that Turcotte committed the crime. The explanation of the residue found on his hand was that he had been helping a friend work on an automobile. Turcotte had been charged with other robberies and Defendant presented some witnesses in those cases to show modus operandi and to show that the handgun had been in Turcotte's possession for some time. . . .

Trial Court Opinion at 2–4.

The evidence introduced at trial thus showed that but *one* man entered the delicatessen, robbed the customers, and shot the victim. The Commonwealth's theory was that McCracken was that one man. Turcotte's admission, which suggests that *he* was the man in the delicatessen, and that the gun then went off accidentally, was inconsistent with the Commonwealth's proof regarding the identity of the shooter. Moreover, the admission corroborated the defense

theory that it was Turcotte, and not McCracken, who committed the crime. Because the Commonwealth alleged that McCracken's only role in the conspiracy was as the man who entered the delicatessen and actually committed the robbery and murder, Turcotte's admission would tend to make the inference that McCracken did not participate in the crime more likely. *See Commonwealth v. Anderson, supra; Commonwealth v. Colon, supra.* Accordingly, on this record, we must conclude that Turcotte's admission is relevant to McCracken's case, and thus would be admissible. We still must determine, however, whether a new trial is warranted by this after-discovered evidence.

## II.  AFTER–DISCOVERED EVIDENCE CLAIM

A new trial must be granted on the basis of after-discovered evidence only if the evidence

(1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Colson,* 507 Pa. 440, 469, 490 A.2d 811, 826 (1985) (quoting *Commonwealth v. Valderrama,* 479 Pa. 500, 505, 388 A.2d 1042, 1045 (1978)). *See also Commonwealth v. Buehl,* 510 Pa. 363, 393, 508 A.2d 1167, 1182 (1986).

■  Our review of the record convinces us that the after-discovered evidence offered by appellee did not meet the above standard for two reasons. First, the evidence offered was merely corroborative of and cumulative to appellee's theory at trial. At trial, appellee introduced extensive evidence that tended to show that Turcotte had committed four other robberies in Delaware County, employing the same *modus operandi* and the same gun that were used in the instant case. The inference sought, of course, was that Turcotte also committed this crime. This theory, presented

in such detail, and which the trial court aptly characterized as "believable", was in fact unanimously disbelieved by the jury. Because Turcotte's admission was merely corroborative of and cumulative to evidence already capably presented at trial, we cannot conclude that it, alone, would be likely to compel a different result. *See, e.g., Commonwealth v. Tervalon,* 463 Pa. 581, 588, 345 A.2d 671, 675 (1975).

Second, and more importantly, Turcotte's admission was not of such a nature and character that its introduction at a retrial of McCracken would likely compel a different verdict. Preliminarily, we note that the *content* of Turcotte's admission undermines its reliability. Turcotte never actually stated that he was *in* the delicatessen, or that *he* fired the gun. Indeed, the statement contains *no* detail, but merely implies Turcotte's presence and culpability. Moreover, we note that the circumstances attending the admission undermine its reliability. Turcotte made the admission to McDougall while he was attempting to get McDougall to intercede on his behalf in securing a plea arrangement with the Commonwealth. N.T. April 11, 1984 at 27–30 (quoted *supra*). Because the statement was made to McDougall while charges related to the killing were still outstanding against Turcotte, and because it apparently was made, at least in part, in return for McDougall's intercession on Turcotte's behalf, the statement "was not unlike that of 'a co-conspirator who is already in prison and realistically has little to lose by attempting to free his partner.' " *Commonwealth v. Tervalon, supra* (quoting *Commonwealth v. Mosteller,* 446 Pa. 83, 91, 284 A.2d 786, 789 (1971)). Accordingly, we must view Turcotte's admission, made under circumstances where he had little to lose, with great caution. *See Commonwealth v. Tervalon, supra. See also Commonwealth v. Scott,* 503 Pa. 624, 630, 470 A.2d 91, 94 (1983) (post-verdict accomplice testimony should be considered with caution); *Commonwealth v. Treftz,* 465 Pa. 614, 630, 351 A.2d 265, 272–73 (1976) (citations omitted) (when confession is not such as would put declarant in position where further criminal prosecution might occur, confession must be viewed with great caution).

Because we find that Turcotte's admission was merely corroborative of and cumulative to evidence introduced at appellee's trial, and because we find that it was not of such a nature and character that it would be likely to produce a different result if introduced at a new trial, we conclude that it was not such after-discovered evidence as would warrant a new trial. Accordingly, we must hold that the trial court erred in granting appellee McCracken a new trial.

For the foregoing reasons, we reverse the trial court's order granting appellee a new trial, reinstate the jury verdict, and remand the case for sentencing.

Order reversed. Jury verdict reinstated. Case remanded for sentencing.