**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Heidi Nicole STATUM, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 15, 2000.
Filed Feb. 16, 2001.

Gregory B. Abeln, Chambersburg, for appellant.

John M. Lisko, Assistant District Attorney, Carlisle, for Com., appellee.

Before McEWEN, President Judge, DEL SOLE, KELLY, POPOVICH, JOHNSON, JOYCE, MUSMANNO, ORIE MELVIN, LALLY–GREEN, JJ.

MUSMANNO, J.:

¶ 1 Heidi Nicole Statum appeals from the judgment of sentence entered by the trial court following her conviction of criminal conspiracy[1] and delivery of a controlled substance.[2] We vacate the judgment of sentence and remand for a new trial.

¶ 2 On February 5, 1998, Statum was arrested for the alleged delivery of 2.0 grams of crack cocaine to a confidential informant, who was working in concert with the Bureau of Narcotics Investigation, Pennsylvania Office of Attorney General. This drug transaction took place on August 5, 1997. Upon her arrest, Statum retained Stephen D. Kulla, Esquire ("Kulla") as counsel.

¶ 3 On February 10, 1998, Kulla and Statum met with Statum's friend, LaShae Scalia ("Scalia"). Scalia's mother, Kulla's secretary and Kulla's associate were also present at the February 10, 1998 meeting. During that meeting, Scalia admitted that *she*, not Statum, was the individual involved in the August 5, 1997 drug transaction.

¶ 4 At Statum's trial, Kulla called Scalia as a defense witness. The Commonwealth objected to Scalia as a witness and requested an offer of proof. Outside of the presence of the jury, the trial court discussed the matter with Kulla, Scalia, and the prosecutor. During this discussion, Kulla described the testimony he sought to present as follows:

> My questions would be relating to ... whether [Scalia] received a phone call from Charles Green on August 5, 1997 asking her to make a delivery to the car wash and that did she, in fact, deliver the drugs to undercover officer Donna Dellarciprete on August 5, 1997.

N.T., 5/14/98, at 3. Scalia, however, informed the trial court that she would invoke the Fifth Amendment privilege against self incrimination if called as a witness, and that she had informed Kulla of her intention to do so prior to Statum's trial date.[3] *Id.* at 5. For that reason, the trial court refused to allow Scalia to be called as a witness. *Id.* at 9.

¶ 5 Kulla then asked that he be allowed to call other witnesses to testify about Scalia's February 10, 1998 statement, claiming that Scalia was unavailable as a witness. *Id.* at 9. The trial court ultimately rejected Kulla's request, and entered the following Order:

> [T]he Court after hearing the evidence finds that there is [sic] not any corrobo-

---

*See* 18 Pa.C.S.A. § 903.

*See* 35 P.S. § 780–113(a)(30).

Kulla, however, indicated that he had not asked Scalia directly whether she would invoke her Fifth Amendment privilege if called upon to testify. *Id.* at 12.

rating circumstances which clearly indicate the trustworthiness of [Scalia's February 10, 1998] statement. The Court orders that it not be admitted.

Trial Court Order, 5/14/98.

¶ 6 A jury convicted Statum of delivery of a schedule II controlled substance, *see* 35 Pa.C.S.A. § 780–113(a)(30), and conspiracy, *see* 18 Pa.C.S.A. § 903. The trial court sentenced Statum to a prison term of one to five years and to a consecutive probation term of two years.

¶ 7 Statum filed a post-sentence Motion asserting the ineffective assistance of her trial counsel. According to Statum, Kulla was ineffective for failing to inform the jury that Scalia, not Statum, delivered the cocaine to the informant. After evidentiary hearings, the trial court denied Statum's Motion. Thereafter, Statum filed the instant timely appeal.

¶ 8 Statum claims that the trial court erred when it determined that (a) Scalia's statement would not be admissible at Statum's trial, and (b) that Kulla was not ineffective for failing to present Scalia's statement. We agree.

¶ 9 When evaluating a claim of ineffective assistance of counsel, our Court employs the following test:

The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. Once this threshold is met we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. If we determine that there was no reasonable basis for counsel's chosen course[,] then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice.

*Commonwealth v. Edwards*, 762 A.2d 382, 390 (Pa.Super.2000) (quoting *Commonwealth v. Rovinski*, 704 A.2d 1068, 1071 (Pa.Super.1997)).

¶ 10 On January 26, 1999 and April 6, 1999, the trial court heard evidence on Statum's ineffectiveness claim. At the January hearing, Statum testified that people often mistake her for Scalia because they look alike. N.T., 1/26/99, at 7. Statum further testified that she did not commit the crimes underlying her conviction. *Id.* at 11.

¶ 11 At the January 1999 hearing, Kulla testified that, during the February 10, 1998 meeting at his office, Scalia stated that she, not Statum, delivered the cocaine. *Id.* at 22. According to Kulla, Scalia then asked if she could avoid giving her confession to the district attorney. *Id.* at 24–25. At that point, Kulla informed Scalia that he could not give Scalia legal advice and that she would have to seek her own attorney for such advice. *Id.* at 25.

¶ 12 Kulla further recounted that he contacted the district attorney's office and presented a hypothetical situation mirroring the facts of this case. *Id.* The assistant district attorney informed Kulla that, if another person came forward and admitted to committing the crimes with which Statum was charged, it was unlikely that the charges against Statum would be dropped. *Id.* Kulla also testified that he was not aware of any case law that prohibited an attorney from calling a witness whom he knows will invoke the Fifth Amendment. *Id.* at 31.

¶ 13 At the April 6, 1999 hearing on Statum's ineffectiveness claim, Scalia testified that she was the perpetrator of the

August 5, 1997 drug transaction. N.T., 4/6/99, at 12–13. Scalia confirmed that she informed Kulla that she had committed those crimes and that Kulla had told her to invoke the Fifth Amendment at trial. *Id.* at 14. Scalia further stated that she refused to testify at Statum's trial because at that time, she was not ready to take responsibility for her actions. *Id.* at 16.

¶ 14 On May 17, 1999, the trial court denied Statum's post-sentence Motion, stating as follows:

It is without any doubt that Attorney Kulla was ineffective in the way he attempted to introduce the evidence that LaShae Scalia was the "real" perpetrator of the crime.

Trial Court Opinion, 5/17/99, at 4. However, the trial court concluded that Statum failed to establish prejudice resulting from Kulla's ineffectiveness. The trial court opined that Scalia's statement would not have been admissible at Statum's trial. *Id.* at 5–6. According to the trial court, "this court does not believe that [Statum] has met her burden of showing that [Scalia's] statement was against her own penal interest." *Id.* at 6.

¶ 15 The trial court correctly recognized that Statum's claim of Kulla's ineffectiveness could succeed only if evidence of Scalia's confession would have been admissible at Statum's trial. However, contrary to the trial court's determination, we conclude that Scalia's statement would have been admissible as a declaration against penal interest.

¶ 16 An admission against penal interest is a recognized exception to the hearsay rule. *Commonwealth v. Goldman,* 422 Pa.Super. 86, 618 A.2d 1029 (1993). In *Commonwealth v. Hackett,* 225 Pa.Super. 22, 307 A.2d 334 (1973), this Court explained the application of this hearsay exception as follows:

Public policy, the fundamental principles of fairness and the due process of law require the admission of declarations against penal interest where it can be determined that those statements: (1) exculpate the defendant from the crime for which he is charged; (2) are inherently trustworthy in that they are written or orally made to reliable persons of authority or those having [an] adverse interest to the declarant; and that they are made pre-trial or during the trial itself. Under these circumstances, an exception to the hearsay rule, in our view, is mandatory. The protection of innocent defendants must override any technical adherence to a policy that excludes evidence on the ground of hearsay.

*Id.* at 338; *accord Commonwealth v. Laudenberger,* 715 A.2d 1156, 1161 (Pa.Super.1998). The Pennsylvania Supreme Court has recognized the declaration against penal interest hearsay exception where circumstances assure trustworthiness and reliability. *Commonwealth v. Williams,* 537 Pa. 1, 26 n. 8, 640 A.2d 1251, 1263 n. 8 (1994).

¶ 17 In this case, the trial court correctly concluded that Scalia was unavailable at trial because she intended to assert her Fifth Amendment privilege against self-incrimination. *See Commonwealth v. McCracken,* 373 Pa.Super. 90, 540 A.2d 537 (1988), *aff'd,* 524 Pa. 332, 572 A.2d 2 (1990) (holding that a witness who invokes the Fifth Amendment privilege against self-incrimination is unavailable). The trial court then determined that Scalia's statement was not against her own penal interest, and that the statement was without sufficient indicia of reliability so as to allow its admission at trial. Trial Court Opinion, 5/17/99, at 6–7. We disagree with both determinations.

¶ 18 In support of its conclusion that Scalia's statement was not against her own penal interest, the trial court opined that, "in reality," the chance of Scalia being prosecuted for those crimes was negligible. *Id.* at 6. However, regardless of the *likelihood* of her prosecution, Scalia's statement was obviously self-incriminatory and unquestionably against her own penal interest. Scalia received no benefit by disclosing her role in the drug transaction, and she clearly was aware of the possibility that her disclosure would lead to criminal prosecution for the delivery of cocaine.

¶ 19 Furthermore, Scalia's statement was made to a reliable person of authority under circumstances that would assure trustworthiness and reliability. In *Hackett*, a panel of our Court addressed the issue of reliability of a hearsay statement under a factual scenario markedly similar to the facts in the instant case.

¶ 20 James Hackett ("Hackett") was convicted of possession of heroin and operating an automobile under the influence of a narcotic drug. At trial, Hackett claimed that he had been involuntarily drugged. Hackett testified that while working at a gas station, he consumed an unfinished soda, which had been left by Dennis Keyser ("Keyser"). According to Hackett, the soda contained heroin. *Id.* at 335.

¶ 21 Hackett sought to have Keyser testify at trial. When Keyser stated his intention to invoke the Fifth Amendment, the trial court refused to allow Keyser to testify. Counsel then sought to call Hackett's prior counsel, who would have testified that Keyser had made an oral statement admitting to the fact that he had "fixed" Hackett by placing heroin in the soda bottle. *Id.* at 336. Counsel also sought to introduce written statements by Keyser detailing his involvement in the incident. The trial court refused to admit Hackett's oral and written statements. *Id.*

¶ 22 On appeal, a panel of this Court ruled that Keyser's statements fell within the declaration against penal interest exception to the hearsay rule. According to our Court, declarations against penal interest should be admitted when they "(1) exculpate the defendant from the crime for which he is charged; (2) are inherently trustworthy in that they are written or orally made to reliable persons of authority or those having adverse interests to the declarant; and [ (3) ] . . . they are made pre-trial or during the trial itself." *Id.* at 338. The Court further concluded that the statements, which were made by Keyser to defendant's counsel, "a member of the Bar of this Commonwealth," were highly trustworthy, and that the trial court erred in refusing to admit evidence of those statements at trial. *Id.* at 338.

¶ 23 In the instant case, Scalia similarly admitted her role in the drug transaction to a member of the bar of this Commonwealth, Kulla, who was an officer of the court, and a reliable person of authority. Scalia made her statement in Kulla's offices, in front of her mother, Statum, Kulla and members of Kulla's staff. Thus, similar to the facts in *Hackett*, Scalia's statement was made under circumstances that would lend it credibility. We therefore conclude that the trial court erred when it determined that Scalia's statement would not be admissible because it lacked reliability. Because Scalia's statement was against her own penal interest, and because the statement exculpated Statum and was made under reliable circumstances, the evidence would have been admissible at trial as an exception to the rule against hearsay.

¶ 24 We also conclude that Statum established the remaining elements of her ineffectiveness claim. Kulla had no reasonable basis for failing to introduce the

contents of Scalia's statement by other means.[4] Furthermore, there is no doubt that Statum, by being convicted of a crime she may not have committed, was prejudiced by Kulla's actions. *See Edwards, supra* (setting forth the elements of an ineffectiveness claim). Because Statum has made out a meritorious claim of ineffective assistance of counsel, we vacate the judgment of sentence and remand for a new trial.

¶ 25 Judgment of sentence vacated; case remanded for a new trial; jurisdiction relinquished.

---

4. Kulla could have withdrawn his representation so that he could be called as a witness to testify regarding Scalia's statement, or he could have offered the testimony of the other witnesses to the statement.