J-A26045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMAL R SANDERS | : | No. 2549 EDA 2022 |
| | : | |

Appeal from the PCRA Order Entered September 12, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-1010881-1997

BEFORE:  DUBOW, J., McLAUGHLIN, J., and KING, J.

DISSENTING MEMORANDUM BY KING, J.:          **FILED JANURY 8, 2025**

The Majority reverses the order of the Philadelphia County Court of Common Pleas, which granted Appellee's PCRA petition and awarded him a new trial.  Initially, I agree with the Majority that the recantation statement of Shawn Clark constitutes a newly-discovered fact such that Appellee can overcome the PCRA's jurisdictional time-bar hurdle.[1]  I write separately,

_____

[1] **See** 42 Pa.C.S.A. § 9545(b)(1)(ii).  **See also Commonwealth v. Richardson**, No. 1744 EDA 2019 (Pa.Super. filed May 3, 2021) (unpublished memorandum) (holding appellant satisfied newly-discovered facts exception to time-bar where nothing in record suggested that witness's admission of deal for leniency in exchange for her testimony or general recantation of trial testimony were facts previously known to appellant; witness testified at PCRA hearing that she had never told anyone about plea deal until that time; further, this Court would find it untenable and unreasonable to impose standard on PCRA petitioners that would require them to continually harass Commonwealth's witness for decades after conviction in order to satisfy due
*(Footnote Continued Next Page)*

however, because I agree with the PCRA court that Appellee is entitled to relief on his substantive claim of after-discovered evidence. As such, I respectfully dissent.

As the Majority explains, Appellee argued that he was entitled to post-conviction relief based on Clark's recantation statement that he had falsely testified against Appellee at trial. Specifically, Clark had testified at Appellee's trial that Appellee previously loaned him the gun that was used in Johnson's shooting. As Appellee's cohort, Tucker, was the shooter in the incident, Clark's testimony was critical in connecting Appellee to previously having possession of the murder weapon, and supporting the Commonwealth's theory that Appellee then supplied Tucker with the gun used to kill Johnson. Appellee claimed, and the PCRA court agreed, that Clark's statement was admissible pursuant to the statement against interest exception to the rule against hearsay.

As the Majority correctly recites, our Rules of Evidence provide the statement against hearsay exception at Rule 804(b)(3). *See* Pa.R.E. 804(b)(3). "Before crediting as reliable a statement against penal interest, the court must consider the declarant's motive for making the statement and whether the surrounding circumstances indicate the statement is

_____

diligence requirement in event that said witness eventually comes forward to recant or provide new evidence); Pa.R.A.P. 126(b) (explaining that we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

trustworthy." ***Commonwealth v. Padillas***, 997 A.2d 356, 365-66 (Pa.Super. 2010), *appeal denied*, 609 Pa. 687, 14 A.3d 826 (2010) (internal citation omitted).

> Reliability is determined by referring to the circumstances in which the declarant gave the statement, not by reference to other corroborating evidence presented at trial. ***Commonwealth v. Robins***, 571 Pa. 248, 812 A.2d 514 (2002). Among the factors a court might consider in determining the reliability of inculpatory or exculpatory statements are:
>
>> the circumstances under which the statements were uttered, including the custodial/non-custodial aspect of the setting and the identity of the listener; the contents of the statement, including whether the statements minimize the responsibility of the declarant or spread or shift the blame; other possible motivations of the declarant, including improper motive such as to lie, curry favor, or distort the truth; the nature and degree of the "against interest" aspect of the statements, including the extent to which the declarant apprehends that the making of the statement is likely to actually subject him to criminal liability; the circumstances or events that prompted the statements, including whether they were made with the encouragement or at the request of a listener; the timing of the statement in relation to events described; the declarant's relationship to the defendant; and any other factors bearing upon the reliability of the statement at issue.

> ***Id.*** at 267, 812 A.2d at 525–26.

***Commonwealth v. Cascardo***, 981 A.2d 245, 258 (Pa.Super. 2009), *appeal denied*, 608 Pa. 652, 12 A.3d 750 (2010).

"Pennsylvania has long recognized that a witness's admission to a crime is considered reliable and, therefore, admissible because its 'trustworthiness

is safeguarded by the improbability that a declarant would fabricate a statement which is contrary to his own interests.'" ***Commonwealth v. Little***, 246 A.3d 312, 324 (Pa.Super. 2021) (quoting ***Commonwealth v. Colon***, 461 Pa. 577, 337 A.2d 554, 556 (1975)). Significantly, it is the **possibility of prosecution, not the likelihood of prosecution**, which renders a statement against an individual's interest, and which lends weight to an admission. ***Id.*** (citing ***Commonwealth v. Statum***, 769 A.2d 476, 480 (Pa.Super. 2001), *appeal denied*, 566 Pa. 681, 784 A.2d 117 (2001)).

Instantly, the PCRA court explained its evidentiary ruling concerning Clark's affidavit and proffered testimony, by way of Nixon,[2] as follows:

> Rule 804 takes applicable hearsay exceptions into account when the declarant is unavailable, most significantly when a declarant makes a statement that is so contrary to their interests, including but not limited to exposing them to criminal liability, that a reasonable person would not make such a statement unless it was true. **Clark's affidavit revealed that he could have faced criminal culpability if he did not falsely testify against [Appellee] at trial**, information that clearly fits the criteria of Rule 804.
>
> It is significant that Clark had passed away while visiting Pittsburgh, Pennsylvania a month prior to the evidentiary hearing, making him unavailable to testify. This would have potentially barred his affidavit at the evidentiary hearing. However, **it is clear to this court that when Clark proffered his initial affidavit, Clark was unaware that he was going to pass away and that, if he had lived, that he would potentially be subject to criminal liability**.[9] As a natural consequence, this court determined that Clark provided the information contained in his affidavit

---

[2] The PCRA court found Nixon's testimony credible. (***See*** PCRA Court Opinion, filed 12/27/22, at 3 n.3, 17).

- 4 -

under such circumstances that supported the truthfulness of the information proffered.[10]

> [9] This court would have found differently as to the veracity of the information provided by Clark if Clark had provided such information while knowing that he was going to pass away and thus avoid potential criminal liability. For example, if Clark had been suffering from a terminal illness and provided this information, then it could be inferred that Clark had no reason to be truthful in his affidavit because he knew he would pass away before facing any criminal liability for lying to police and at Appellee's trial.

> [10] It is important to note that Clark initially provided his affidavit on August 5, 2019. Appellee, through his attorney, filed the underlying PCRA Petition on January 8, 2020. The First Judicial District was shut down due to the COVID-19 Pandemic in March 2020. Clark could not have predicted that a global pandemic would cause delays and prevent Clark from testifying prior to his passing. It is evident that when Clark provided his affidavit that not only was the information contained within against Clark's own interest but that Clark had no way of knowing that the COVID-19 Pandemic would delay the evidentiary hearing from occurring until Clark had passed away. This court determined that these circumstances sufficiently bolstered the credibility of the information contained within Clark's affidavit for it to be considered.

(PCRA Court Opinion at 16) (internal citations omitted) (emphasis added).

The PCRA court further explained:

> Clark's affidavit made several facts clear. Clark, at the age of 17, had already been charged and sentenced for firearms offenses. He was at a boot camp known as Vision Quest when homicide detectives picked him up and questioned him about Appellee's criminal matter. **Clark also stated that police told him that the gun Clark used in his own incident was used to kill Johnson and that, if Clark did not testify against Appellee at trial, that Clark would**

- 5 -

**be charged with murder.** Taken to be accurate, it becomes evident that Clark, in his affidavit where he stated that he never received a firearm from Appellee, was drawing a more direct link between himself, Tucker, and the firearm used to kill Johnson. At trial, Clark testified that the murder weapon went from himself to Appellee, after which it is apparent that the murder weapon went from Appellee to Tucker. This separated Clark from Johnson's murder. However, in Clark's affidavit, Clark exonerates Appellee as the individual who controlled and provided the murder weapon, in essence stating that the murder weapon went directly from Clark to Tucker. **This removes the degree of separation that protected Clark from liability for Johnson's murder and would likely result in Clark facing culpability for providing the weapon.** As a natural consequence of this affidavit, Clark would no longer be separated from Johnson's murder by a third party. This would absolutely be a statement against Clark's own interests and, ergo, adds reliability to Clark's affidavit.

(*Id.* at 12) (emphasis added).

On this record, I cannot agree with the Majority that the PCRA court abused its discretion in deciding that Clark's affidavit, and testimony by way of Nixon, satisfy the proffered hearsay exception. *See* Pa.R.E. 804(b)(3); *Padillas, supra*; *Cascardo, supra*. Based on the circumstances surrounding Clark's trial testimony,[3] the record reflects that when Clark provided his

---

[3] The PCRA court expressly considered the following circumstances:

As stated, Clark was questioned by police in this matter when he was seventeen years old. Clark was taken by homicide detectives from his boot camp program and questioned regarding Johnson's murder. Clark was informed that Appellee had control over firearms and that refusing to testify against Appellee could have resulted in Clark facing murder charges. This sort of pressure

*(Footnote Continued Next Page)*

recantation testimony, Clark believed he could have been implicated in Johnson's murder for having provided Tucker with the murder weapon. ***See Little, supra***. Thus, I would conclude that Clark's statement was inherently trustworthy and would fall under the statement against interest exception to the rule against hearsay.

I also disagree with the Majority's conclusion that even if Clark's testimony were admissible, it would not likely compel a different verdict. It is well settled that "before granting a new trial, a court must assess whether the alleged after-discovered evidence is of such nature and character that it would likely compel a different verdict if a new trial is granted." ***Padillas, supra*** at 365. Indeed, "an appellate court may not interfere with the denial or granting

---

understandably strengthened Clark's motive to testify falsely against Appellee at trial as Clark had just been convicted and was serving a sentence for an unrelated firearms offense. Based on these factors, even if this court felt that Clark did not prove that he was the victim of police misconduct, having heard the testimony this court determined that there was sufficient information presented in Clark's affidavit to prove that Clark was scared enough to have testified falsely against Appellee that it was the same gun used to murder Johnson in order to avoid facing any further consequences regarding his own firearms violations. Clark was a juvenile serving time for firearms violations and was understandably concerned about facing more serious charges as stated in his affidavit. Consequently, this court determined that the evidence presented by Appellee was credible and was sufficient to cast doubt on Clark's trial testimony.

(PCRA Court Opinion at 7-8).

of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion[.]" **Commonwealth v. Loner**, 836 A.2d 125, 135 (Pa.Super. 2003) (*en banc*), *appeal denied*, 578 Pa. 699, 852 A.2d 311 (2004) (quoting **Commonwealth v. Mosteller**, 446 Pa. 83, 88-89, 284 A.2d 786, 788 (1971)). As the Majority acknowledges, "[t]he deference normally due to the findings of the [PCRA] court is accentuated where what is involved is recantation testimony." **Loner, supra** at 141.

Here, the PCRA court assessed the evidence of Clark's recantation and found that it would likely compel a different verdict if a new trial were granted. As the PCRA court explained, the only eyewitness to the murder, Houser, identified Appellee as present at the scene of the shooting; however, Appellee's connection to the murder was established through Clark's testimony tying the murder weapon—the gun Tucker used to shoot the victim—to Appellee. The PCRA court found that Clark's testimony played a central role at trial "designed to paint Appellee as someone who had control over firearms, lent firearms to people, and lent the very same firearm used in the murder to Clark, a fact that was crucial to convicting Appellee at a trial where it had been determined that Appellee did not personally shoot Johnson." (PCRA Court Opinion at 7). As the PCRA court observed, "Appellee's mere presence at the scene of the shooting with nothing more would likely have been insufficient for a jury to have determined that Appellee had conspired in

and was therefore guilty of Johnson's murder." (*Id.*) Further, "[w]ithout Clark, the Commonwealth's sole witness would have been Houser, and Houser neither saw who shot Johnson nor tied Appellee to the weapon used in Johnson's murder. By himself, Houser's testimony would have likely been insufficient to prove Appellee's guilt at trial." (*Id.* at 8).

The PCRA court went on to state:

> The Commonwealth's theory of Appellee's case was not that Appellee himself shot Johnson, but rather that Appellee was present at the scene with Tucker, who admittedly did shoot Johnson, and that Appellee conspired with Tucker to murder Johnson. **Part of this theory was that Appellee provided the murder weapon, hence why Clark's testimony was crucial to their case of proving Appellee's participation in a conspiracy.** If Clark had not testified to such information at trial or if Clark's affidavit had been available at trial, it is clear that the outcome of Appellee's trial would potentially have been very different.

(*Id.* at 14) (emphasis added).

In my opinion, the PCRA court did not abuse its discretion in evaluating the strength and credibility of Clark's recantation and finding that if a new trial were granted the result would likely be different. *See Loner, supra*. *See also Commonwealth v. Medina*, 92 A.3d 1210 (Pa.Super. 2014) (*en banc*), *appeal dismissed as improvidently granted*, 636 Pa. 77, 140 A.3d 675 (2016) (holding that it was within exclusive province of PCRA court to determine credibility of recantation testimony; finding no clear abuse of discretion on part of PCRA court in making its credibility determination, this Court is bound to accept it). Accordingly, I dissent.