J-S18012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JUAN PABLO RIOJAS | : | |
| | : | |
| Appellant | : | No. 1530 MDA 2018 |

Appeal from the PCRA Order Entered August 9, 2018
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0002169-2012

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS*, P.J.E.

MEMORANDUM BY BOWES, J.:                **FILED: AUGUST 22, 2019**

Juan Pablo Riojas appeals *pro se* from the order entered by the PCRA court that denied his first counseled PCRA petition and permitted counsel to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). After careful review, we affirm.

Appellant was arrested on October 10, 2012, and charged with two counts of rape by forcible compulsion, and one count each of false imprisonment, terroristic threats, simple assault, intimidation of a witness, aggravated assault, and burglary.[1]   The charges stemmed from actions

---

[1] Aggravated assault and burglary were charged at a separate docket number, which was filed in November of 2012.  However, the cases were joined before trial.

*   Former Justice specially assigned to the Superior Court.

Appellant committed against his paramour, Ana Medellin, from October 4, 2012 to October 9, 2012.

By way of background, in December of 2008, Appellant illegally brought the pregnant victim and their minor child from Mexico to live with him in Chambersburg, Pennsylvania. The victim did not speak English and knew no one in the United States other than Appellant. After the victim moved in with Appellant, he began hitting her and threatening to have her deported without the children if she reported the abuse. On February 28, 2012, the victim left the house after Appellant came home drunk and assaulted her in front of the children. At first, she went to a Women in Need ("WIN") shelter, where she met an interpreter named Vanessa Vasquez, but she eventually moved into her own apartment with the children.

On October 4, 2012, Appellant forced his way into her home, threw coffee on the wall, broke various objects, and repeatedly assaulted her until she lost consciousness. Later, Appellant threatened to kill her as he cut her chest with a knife he obtained from her kitchen. Appellant made a phone call from the victim's phone to his other paramour, Ana Ochoa, and forced the victim to call off of work. After the children arrived home from school, Ana Ochoa and a police officer called the victim's phone. Appellant spoke with the officer before taking the victim and children with him to a Lowes store. While in the Lowes restroom, the victim sent a text message to Ms. Vasquez asking for help. After Lowes, Appellant took the victim and the children to a jobsite

with him for several hours, later returning to the victim's apartment where the physical abuse continued.

The next morning, before dropping her off at work, Appellant took the children to school and threatened the victim that she would never see her children again if she reported the abuse. While at work, she complied with his order to send him a message saying that she loved and missed him. That night, Appellant picked the victim up from work and the children from a babysitter. Once back in the apartment, Appellant proceeded to vaginally rape the victim. The next two days proceeded similarly, with Appellant controlling all of the victim's movements. On October 8, 2012, Appellant vaginally raped the victim a second time, before hitting her with a toy baseball bat on her head in front of the children. Afterwards, Appellant left the apartment with the victim's keys.

In the morning of October 10, 2012, the victim went to the police station where she was interviewed by detectives and transported to the hospital for a sexual assault examination. Ms. Vasquez accompanied the victim for the examination, assisting as a translator. The examination revealed small lacerations in the victim's labia minor, which was consistent with the victim's report of forcible vaginal penetration by Appellant. Bruising on the victim's face, fingers, and chest was photographed. Scratches on her arms and chest were also documented.

On October 22, 2012, police interviewed the victim for a second time. Three days later, police went to the victim's residence in order to collect

evidence. While there, they retrieved the knife involved in the assault, took photographs of the damage to the victim's residence, and took an additional photograph of the bruising on the victim's face. Ms. Vasquez was also present and acted as a translator between the victim and the police. The knife was tested for DNA, but it was found to contain a mixture of DNA such that it could not be interpreted. However, sperm analyzed from the crotch area of the victim's underwear was determined to be a match to the DNA profile of Appellant. During the pendency of this case, the victim obtained a U-Visa[2] and became a legal alien for the first time.

Appellant proceeded to a preliminary hearing on November 13, 2012. At the conclusion of the hearing, all of the charges were held for trial. Appellant's Attorney Annie Gomez-Shockey filed a motion to introduce evidence of prior sexual encounters. The Commonwealth filed an answer and the trial court entered an order granting the motion. The trial court also continued the trial to the next trial term. Trial counsel also filed a motion asking for the appointment of an expert. The trial court entered an order granting the motion.

On November 4, 2013, the trial court issued a pre-trial order notifying the defense that the Commonwealth had advised the court of their intent to offer an expert witness in the field of counterintuitive behavior by victims and

---

[2] A U-Visa is a temporary visa given to an alien who has been a victim of a qualifying crime, has suffered serious physical or mental harm as a result, and is cooperating in the prosecution of the crime. N.T. Trial, 3/6/14, at 26-29.

directed Appellant that he had until December 9, 2013 to file a motion *in limine*. Attorney Gomez-Shockey filed a motion *in limine* to exclude the expert report and testimony and the Commonwealth responded with its answer. A *Frye*[3] hearing was held and the trial court denied Appellant's motion to exclude the testimony.

On January 23, 2014, Attorney Gomez-Shockey filed a motion for transcript of a hearing that occurred on May 20, 2013, involving his child support case with the victim. The trial court issued an order directing the support master to provide a copy of the audio recording of the hearing.

On January 30, 2014, Attorney Gomez-Shockey filed a motion in limine to preclude evidence of prior bad acts. In the motion, Appellant sought to preclude the introduction of allegations of abuse that the victim claimed to have occurred prior to October of 2012. The court directed the Commonwealth to file an answer. Instead, the Commonwealth filed its own motion to introduce evidence of prior bad acts, requesting to introduce the evidence Appellant sought to preclude. On February 28, 2014, the court issued an order stating that the evidence of prior bad acts would be admissible depending on the manner in which the evidence was presented at trial. The court also noted that it presumed Appellant was opposed to the

---

[3] Pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), in order to be admissible, the methodology underlying novel scientific evidence must be sufficiently established and accepted in the relevant scientific community. The *Frye* test is the standard. *See Commonwealth v. Topa*, 369 A.2d 1277, 1281 (Pa. 1977).

Commonwealth's motion and left open the opportunity for Appellant to object contemporaneously at trial.

On February 18, 2014, Attorney Gomez-Shockey filed a motion to obtain a transcript of the *Frye* hearing to assist her cross-examination preparations for the Commonwealth's expert at trial. The court denied this motion, finding that the court reporter did not have enough time to generate the transcript prior to trial.

Appellant proceeded to a jury trial on March 4, 2014, and was found guilty on all counts except for aggravated assault and burglary. As a result, Appellant received an aggregate standard range sentence of 103 to 270 months of incarceration. Appellant filed a timely post-sentence motion. After the Commonwealth filed an answer and Appellant filed a written argument in support of his post-sentence motion, the court issued an opinion and order denying it. Appellant's direct appeal rights were reinstated through the PCRA. Appellant pursued a *nunc pro tunc* direct appeal challenging the admittance of the Commonwealth's expert, the admission of the prior bad acts testimony, the trial court's denial of his motion for judgment of acquittal, the trial court's granting of the Commonwealth's motion to quash,[4] the trial court's denial of a defense DNA expert, and the court's denial of Appellant's motion for continuance of trial due to the absence of a necessary witness. On January

---

[4] The motion to quash resulted in the withholding of the victim's U-Visa application and some information pertaining to it that Appellant had subpoenaed.

31, 2017, this Court affirmed Appellant's judgment of sentence. *See Commonwealth v. Riojas*, 158 A.3d 169 (Pa.Super. 2016) (unpublished memorandum).

On August 25, 2017, Appellant filed the instant timely *pro se* PCRA petition raising sixteen issues, requesting discovery, and attaching fourteen exhibits. Appointed counsel, Attorney Mark Bayley, filed a motion to withdraw and a *Turner*/*Finley* no-merit letter. The PCRA court granted PCRA counsel's motion to withdraw and issued notice of its intent to dismiss the petition without a hearing. *See* Pa.R.Crim.P. 907 Notice, 7/19/18, at 2. In a contemporaneous opinion, the PCRA court detailed why none of Appellant's sixteen issues entitled him to relief under the PCRA. *See* PCRA Opinion, 7/19/18, at 12-58. Appellant did not file a response and his petition was dismissed by the PCRA court on August 9, 2018.

Appellant filed a timely *pro se* notice of appeal and the PCRA court directed him to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, filing a statement on September 28, 2013, wherein he raised three new issues in addition to the sixteen preserved in his *pro se* PCRA petition. The PCRA court issued a Pa.R.A.P. 1925(a) decision, relying on its July 19, 2018 opinion and addressing the three new issues therein. The PCRA court found two of the new issues to be factually inaccurate and the third to be waived for failure to raise the claim in response to its 907 notice.

Appellant raises three issues in his statement of questions for our review:

I. Whether the PCRA court erred and abused it's [sic] discretion by dismissing Appellant's PCRA petition as untimely pursuant to 41 Pa.C.S.A. §9545(b)?

II. Whether the Appellant's sentence pursuant to the sex offender registration and notification act (SORNA) is illegal and violates the ex post facto clause of the United States and Pennsylvania Constitutions, where the SORNA statutes registration requirements constitutes a punishment?

III. Whether the PCRA court erred and abused it's [sic] discretion in dismissing Appellant's PCRA petition where all prior counsel(s) rendered ineffective assistance of counsel in violation of the sixth amendment of the United States Constitution?

Appellant's brief at 4.[5]

We begin with the principles pertinent to our review. Our "review is limited to the findings of the PCRA court and the evidence of record" and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa.Super. 2012). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." *Id*. "[W]here the petitioner raises questions of law, our

---

[5] Appellant's third question contains eight subparts, addressing the sixteen claims he previously preserved in his pro se PCRA petition.

standard of review is *de novo* and our scope of review is plenary." Finally, we "may affirm a PCRA court's decision on any grounds if the record supports it." *Id*.

In his first issue, Appellant challenges the PCRA court's dismissal of his PCRA as untimely. Appellant's brief at 13. The PCRA court and the Commonwealth respond that Appellant's PCRA was not dismissed as untimely. Commonwealth's brief at 5. Instead, the PCRA court's August 9, 2018 dismissal order contained a typo stating that it dismissed the petition as untimely, while "a review of the entire record shows that the PCRA court dismissed the petition on the merits." Commonwealth's brief at 5. After a careful review of the record, we agree.

On July 19, 2018, the PCRA court issued an opinion along with its Rule 907 notice, in which it addressed all sixteen of the issues Appellant raised in his *pro se* PCRA petition on the merits. *See* Trial Court Opinion, 7/19/18, at 15-58. Later, in its 1925(b) Opinion, the PCRA court explicitly stated that it "did not dismiss the petition for being untimely." *See* PCRA Court Opinion, 10/23/18, at 8. Accordingly, Appellant is entitled to no relief on this claim of error.

Appellant's second issue challenges his sex offender registration based on the holding in ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017). Appellant's brief at 15-18. Specifically, Appellant argues that his reporting requirements are illegal and violate the *ex post facto* clauses of the United

States and Pennsylvania Constitutions. *Id*. at 16. The Commonwealth and PCRA court counter that Appellant's issue is waived because he did not raise it before the PCRA court. *See* Commonwealth's brief at 6. We agree.

Generally, "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302. Where counsel files a *Turner*/*Finley* no-merit letter, the proper procedure for raising claims not originally included in a *pro se* petition is to request leave to amend the petition in a Rule 907 response. *Rykard*, *supra* at 1192.

A review of the record reveals that Appellant did not raise this issue in his *pro se* PCRA petition and neglected to file a response to the PCRA court's Pa.R.Crim.P. 907 notice of dismissal. Since Appellant did not seek leave to amend his petition or otherwise preserve this claim, he waived the issue when he raised it for the first time in his Pa.R.A.P. 1925(b) statement.[6]

Appellant's remaining claims allege trial and appellate counsel ineffectiveness. In reviewing claims of ineffective assistance of counsel, we note that counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. *Commonwealth v. Becker*, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, the petitioner must plead and prove (1) the legal

---

[6] In any event, Appellant's substantive claim lacks merit. He remains incarcerated, serving the sentence imposed at this case. Therefore, Appellant has never registered as a sexual offender. Additionally, SORNA has been replaced by Act 29, so he will not be required to register under SORNA in the future. *See* 42 Pa.C.S. § 9799.52. As such, Appellant's argument is moot.

claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's interests; and that (3) prejudice resulted. *Id*. The failure to establish any of the three prongs is fatal to the claim. *Id*. at 113.

First, Appellant alleges that trial counsel rendered ineffective assistance by stipulating to facts at trial without consulting with him. *See* Appellant's brief at 9, 20. The specific stipulations that Appellant argues deprived him of his constitutional right to confrontation were to chain-of-custody issues related to the sexual assault kit, panties, pajama bottoms, and knife which were sent for DNA testing, and the entry of the victim's hand-written statement in Spanish, along with a document containing its English translation.[7] *Id*. at 21. The PCRA court found this claim lacked arguable

---

[7] Appellant also challenges counsel's alleged stipulation to exclude AT&T and Sprint company experts from testifying at trial. *See* Appellant's brief at 21. However, Appellant has provided no citation to the record where such a stipulation occurred and has not provided any argument beyond this bald assertion to support it. Our own review of the trial transcripts has not uncovered the existence of such a stipulation. Therefore, we are unable to consider this inadequately-developed portion of the claim.

merit, since Appellant provided no legal authority suggesting that such consultation was required. PCRA Court Opinion, 7/19/18, at 21. We agree.[8]

Attorneys undoubtedly have a duty to consult with their clients regarding "important decisions," including questions of overarching defense strategy. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). However, trial counsel does not need to obtain consent for "every tactical decision" made. *See Commonwealth v. Brown*, 18 A.3d 1147, 1158 (Pa.Super.2011). Unlike the decision to plead guilty or testify in one's defense, decisions made where the circumstances are not exceptional, or do not signal a defendant's guilt, do not implicate constitutional concerns. *Id*.

Appellant is challenging the stipulation to the chain of custody of a couple of pieces of evidence and the admission of a defense exhibit. First, trial counsel stipulated to the chain of custody of the sexual assault kit, panties, pajama bottoms, and knife. N.T. Trial, 3/5/14, at 116-17. As a result of the stipulation, both parties agreed that the proper chain of custody procedure was followed when these items were taken into custody by the

---

[8] The PCRA court's analysis of this claim improperly relies on statements allegedly made by trial counsel to PCRA counsel during his investigation of the issues raised in Appellant's *pro se* PCRA petition. As these statements are not part of the record, it was improper for the trial court to base its decision on this information. *See Commonwealth v. Duffey*, 855 A.2d 764, 775 (Pa. 2004) (remanding for a determination of a reasonable basis, noting that in the absence of testimony from counsel, the court "should refrain from gleaning whether such a reasonable basis exists."). However, because we find support in the record for the PCRA court's conclusion that this claim lacks arguable merit, we affirm its decision on that basis.

Chambersburg Police Department, sent to Harrisburg, and then onto the Greensburg DNA lab for analysis. *Id*. at 117. DNA testing results of these materials revealed that Appellant's sperm was in the victim's underwear. Both sides agreed that the victim and Appellant had sexual intercourse. The dispute was to whether that interaction was consensual or the result of a forcible rape. Therefore, simply stipulating to the fact that proper procedures were followed in the transportation and handling of this evidence did not amount to the admittance of guilt such that trial counsel needed to consult with Appellant before engaging in this agreement.

Second, trial counsel stipulated to the entry of the victim's Spanish handwritten statement and its English translation as defense exhibits. N.T. Trial, 3/6/14, at 4-5. Defense counsel utilized these exhibits in its cross-examination of the victim, attempting to impeach the victim by pointing out inconsistencies between the different reports the victim gave over the course of the case. Clearly, an exhibit used to impeach the victim's testimony did not signal Appellant's guilt. Therefore, counsel was not required to consult with Appellant before entering into this stipulation either.

Appellant has failed to convince us that stipulation to a mere custodian of records, someone who would otherwise be unconnected to the performance of the actual analysis, and the stipulation to defense exhibits, which were admitted for his benefit implicate confrontation clause protections.

Accordingly, we find that the PCRA court did not err when it concluded that Appellant's claim lacked arguable merit.

Next, Appellant argues that trial counsel was ineffective for failing to compel the trial court to comply with all of the Rules of Appellate procedure regarding the production of transcripts. Specifically, Appellant challenges the court reporter's failure to notify him that transcripts had been lodged and the trial court's failure to give him the opportunity to make objections to their text. *See* Appellant's brief at 28-29. The Commonwealth and the PCRA court concede that there was a technical deviation from the rules, because the court reporter did not include language regarding the parties' ability to make objections prior to the transcript becoming part of the record. *See* PCRA Court Opinion, 7/19/18, at 16; Commonwealth's brief at 11. Ultimately, however, both conclude that because Appellant has not identified any errors within the transcripts that he wished to object to or indicated how this technical deviation adversely impacted the outcome of his trial, he has not shown the prejudice necessary to entitle him to relief. Trial Court Opinion, 7/19/18, at 18.

We have reviewed the transcripts and discern no abuse of discretion in the PCRA court's conclusion that Appellant has failed to establish the necessary prejudice. Appellant has not identified any inaccuracies in the transcripts to which he was denied the opportunity to object, to or that adversely impacted the outcome of his trial. In fact, Appellant's appellate

counsel utilized the transcripts when making arguments on Appellant's behalf on direct appeal. Therefore, no relief is due.

In a related claim, Appellant alleges that counsel was ineffective when he litigated a sufficiency-of-the-evidence challenge based upon the allegedly defective transcripts. *See* Appellant's brief at 35. The PCRA court dismissed this claim since Appellant had not supported his argument with any controlling precedent that suppression was an appropriate remedy for the technical deviation that existed in the transcripts. *See* PCRA Court Opinion, 7/19/18, at 19. We agree. As explained above, Appellant has not shown how appellate counsel's inaction in this area changed the outcome of his case. Accordingly, we find that the PCRA court did not err when it dismissed this claim.

Fourth, Appellant attacks trial counsel's effectiveness for proceeding with the preliminary hearing without first ensuring that a certified transcript was being made, as allegedly required by Pa.R.Crim.P. 547. Appellant also challenges appellate counsel's failure to raise this issue on appeal. The PCRA court found that both claims lacked merit, since Pa.R.Crim.P. 547 did not support Appellant's argument and he provided no other support for his contention that a transcript of the preliminary hearing was required. We agree.

In cases where a defendant is held for court after a preliminary hearing, Pa.R.Crim.P. 547 requires that the issuing authority prepare a "transcript" of the proceedings. It directs the reader to Pa.R.Crim.P. 135 for a listing of the

general contents required to be contained within the "transcript." A review of these rules reveals that a transcription of hearing notes or witness testimony is not required. Instead, "transcript" refers to what is more commonly called a docket sheet. Such a document must contain items like the date and place of hearings, the charges against the defendant, and the amounts of bail. *See* Pa.R.Crim.P. Rule 135; *see also Commonwealth v. Lee*, 368 A.2d 812, 815 (Pa.Super. 1976) (reviewing the predecessor to Rule 547 and finding that all that was required was "a transcript of [the issuing authority's] docket entries"). Since the Rules of Criminal Procedure do not require a court reporter to create a transcript of the notes of testimony and Appellant has advanced no other argument as to why the preliminary hearing needed to be transcribed, we find no abuse of discretion in the PCRA court's determination that these claims lacked arguable merit.

Fifth, Appellant purports that trial counsel was ineffective for failing to respond to the Commonwealth's February 21, 2014 motion to introduce evidence of prior bad acts. *See* Appellant's brief at 42. The PCRA court found that this claim lacked arguable merit, as it was a mischaracterization of the record. *See* PCRA Court Opinion, 7/19/18, at 34-36. We agree.

On January 30, 2014, Appellant's counsel filed a motion *in limine* seeking to preclude testimony and evidence of various allegations of abuse that the victim stated occurred during the course of her relationship with Appellant, prior to October of 2012. The trial court ordered the

Commonwealth to file an answer to Appellant's motion. The Commonwealth responded with its own motion *in limine* seeking to admit evidence of prior bad acts, instead of an actual answer. However, the Commonwealth requested to admit the same evidence that Appellant's motion *in limine* sought to preclude.

On February 28, 2014, the trial court issued an order wherein it presumed that Appellant was opposed to the Commonwealth's motion based on his previous filing. **See** Trial Court Order, 2/28/14. It also found that the evidence would likely be admissible depending on how it was introduced and what contemporaneous objections defense counsel lodged at the relevant time. **Id**. The issue was preserved and appellate counsel later challenged the admission of evidence surrounding these prior bad acts unsuccessfully. **See Riojas**, **supra** (unpublished memorandum at 3). Since trial counsel did in fact challenge the Commonwealth's motion *in limine*, Appellant's claim lacks arguable merit. Accordingly, we discern no abuse of discretion in the PCRA court's determination that this claim lacked arguable merit.

Sixth, Appellant alleges that the Commonwealth committed a violation of **Brady v. Maryland**, 373 U.S. 83 (1963). Under **Brady** and its progeny, the prosecution has an obligation to disclose exculpatory information that is material to the guilt or punishment of the accused, including evidence of an impeachment nature. **Commonwealth v. Hutchinson**, 25 A.3d 277, 310 (Pa. 2011). In order to establish a **Brady** violation, an accused must prove

- 17 -

that: "[1] the evidence [at issue] was favorable to the accused, either because it is exculpatory or because it impeaches; [2] the evidence was suppressed by the prosecution, either willfully or inadvertently; and [3] prejudice ensued." *Commonwealth v. Lambert*, 884 A.2d 848, 854 (Pa.2005).

The evidence must have been "material evidence that deprived the defendant of a fair trial." *Commonwealth v. Johnson*, 815 A.2d 563, 573 (Pa. 2002). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Commonwealth v. Weiss*, 986 A.2d 808, 815 (Pa. 2009). "[T]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." *Commonwealth v. McGill*, 832 A.2d 1014, 1019 (Pa. 2003).

At trial, the victim testified that Appellant struck her in the head with a baseball bat on the evening of October 8, 2012. N.T. Trial, 3/4/14, at 103. Trial counsel attempted to impeach the victim's testimony during her cross-examination of the sexual assault examiner by pointing out that the victim's injuries were inconsistent with her testimony. N.T. Trial, 3/5/14, at 90-91. The Commonwealth later asked the victim's landlord to identify a toy bat on cross-examination. N.T. Trial, 3/6/14, at 79. Trial counsel did not object, the Commonwealth did not move to admit the bat, and no further testimony

occurred surrounding the bat. Finally, in closing argument, the Commonwealth explained that it showed the landlord the toy bat, in order to highlight the fact that some of the discrepancies in the victim's testimony were the likely result of language barriers she faced and not because she was being untruthful or exaggerating the facts. N.T. Trial, 3/7/14, at 35-36.

Appellant argues that appellate and trial counsel were ineffective for failing to object or challenge on appeal the Commonwealth's introduction of a baseball bat and testimony related to it, since it had not been disclosed to the defense in discovery. *See* Appellant's brief at 47-48. At one point Appellant alleges that the evidence was favorable to him, but later argues that counsel should have objected and moved for suppression of the evidence. *Id*. at 49, 52. Appellant cannot have it both ways. Even if the Commonwealth did withhold the existence of a bat, Appellant must still plead and prove that the evidence was favorable, such that there was a reasonable probability that if it had been disclosed the outcome of the proceeding would have probably been different. He has not done so, and in fact the evidence was disclosed during trial, enabling Appellant to take advantage of any favorable aspects of it. Instead, while arguing that a *Brady* violation occurred, Appellant simultaneously alleges that he was "blindsided" by the evidence and unable to defend himself effectively. Appellant's brief at 52.

Furthermore, Appellant fails to suggest how the outcome of the proceeding would have been different if he had seen the toy bat pretrial. In

fact, it is entirely possible that the toy bat benefited Appellant, as he was acquitted of aggravated assault. As such, we affirm the PCRA court's conclusion that trial and appellate counsel were not ineffective for failing to object and litigate a direct appeal in this area.[9]

Penultimately, Appellant challenges counsel's failure to move for the suppression of the victim's second statement, which was made at the hospital, and the evidence derived from it: the knife, DNA test results of the knife, and pictures taken of the victim's injuries. **See** Appellant's brief at 52. According to Appellant, suppression of the evidence was required pursuant to Pa.R.Crim.P. Rule 519, after the police unreasonably delayed his preliminary arraignment so that they could corroborate the victim's statement. Appellant explains that after he was arrested, police held him for six hours without a preliminary arraignment while the victim was at the hospital being examined and making a statement to the sexual assault examiner. **Id**. at 53, 55. The Commonwealth responds that Appellant has failed to show that an

---

[9] While the PCRA court and the Commonwealth both improperly rely on information gathered by **Turner/Finley** counsel that is not contained in the official record, because an alternative basis for reaching their conclusion is apparent from the record, we affirm. **See Commonwealth v. McGill**, 832 A.2d 1014, 1022 (Pa. 2003) (holding that the court should resolve questions of reasonable basis for counsel's actions in absence of evidentiary hearing only when the answer is clear from the record); **see also Commonwealth v. Spotz**, 870 A.2d 822, 832 (Pa. 2005) (reiterating that "this Court has expressed a distinct preference for a hearing on counsel's strategy before venturing to hold that counsel lacked a reasonable basis for his or her actions or inactions.").

unnecessary delay occurred or that any delay that did occur was related to the victim's sexual assault examination. We agree.

> Pa.R.Crim.P. Rule 519(A)(1) provides in relevant part,
>
> when a defendant has been arrested without a warrant in a court case, a complaint shall be filed against the defendant and the defendant shall be afforded a preliminary arraignment by the proper issuing authority without unnecessary delay.

Pa.R.Crim.P. Rule 519(A)(1). Our Supreme Court has developed a three-part test for determining whether evidence obtained during a pre-arraignment delay should be suppressed: (1) the delay must be unnecessary; (2) the evidence must be prejudicial; and (3) the evidence must be reasonably related to the delay. *Commonwealth v. Williams*, 319 A.2d 419, 420 (Pa. 1974).

Appellant argues that the six hours he spent in custody was unnecessary and that any evidence obtained during that time period or derived from it should be suppressed. However, Appellant has failed to explain how the evidence collected during that period was reasonably related to the delay. In *Williams*, a twenty-seven hour delay occurred between arrest and preliminary arraignment. The Commonwealth admitted that the delay was not due to administrative considerations, but instead to allow the police time to corroborate Williams's story and apprehend other participants in the crime. *Williams*, *supra* at 421. This explanation led our Supreme Court to conclude that the "lack of satisfaction with the accused's initial admission [provided] the reasonable relation of the confession to the unnecessary delay," rendering the delay a violation of the predecessor to Pa.R.Crim.P. 519. Similarly, in

- 21 -

*Commonwealth v. Tingle*, 301 A.2d 701, 703-04 (Pa. 1973), the accused was in police custody for twenty-one and one-half hours prior to arraignment. Six hours after arrest, Tingle gave an incriminating statement. *Id*. The police found the statement to be inadequate and continued the interrogation for another fifteen hours. *Id*. Again, our Supreme Court found that the confession was related to the unnecessary and prejudicial delay. *Id*.

Here, no such connection is present. Appellant spent six hours in custody prior to arraignment. However, unlike in *Williams* and *Tingle*, he did not make any incriminating statements during that time. Also, the record does not support his contentions. A review of the affidavit of probable cause, filed at CP-28-CR-0002169-2012, shows that the criminal complaint was based entirely on the victim's original statement to police, which occurred before Appellant was arrested. *See* Affidavit for Probable Cause, 10/10/12, at 1. At trial, testimony by Officer Dianne Kelso, on cross-examination by Appellant's counsel, confirmed this reality. *See* N.T. Trial, 3/5/14, at 131-32 (agreeing that the entire investigation before the filing of the charges consisted of the victim's statements and officer observations of her in the police station).

Simply because the investigation continued after Appellant was arrested does not mean that the investigation was in any way related to the six hours Appellant spent in custody before the preliminary arraignment. Many administrative tasks must be completed in conjunction with an arrest. Since

Appellant has not shown that the time between arrest and the preliminary arraignment was in any way related to the victim's sexual assault examination, he has not met the burden of proof necessary to entitle him to relief. Therefore, we affirm the PCRA court's decision, finding that this claim lacked arguable merit.[10]

Finally, Appellant attacks trial counsel's failure to object to and move for the suppression of all statements and affidavits on the basis that they were not translated properly from Spanish to English. **See** Appellant's brief at 57. Specifically, Appellant challenges the admission of the translated statements of the victim and all evidence that was based on her statements because there was no offer of the translator's competence. **Id**. Additionally, the translations of the victim's statements were not signed by the translators, the translators were not identified, and no oaths of affirmation to make a true translation were attached. **Id**. at 58. Appellant cites to Fed.R.E. 604, Pa.R.E. 901, and Pa.R.E. 603 in support of his argument. **Id**. at 58-59.

The Commonwealth argues that Appellant's claim is without merit, as he did not provide any support for his allegation that these requirements apply to translations made outside of the courtroom, that are later properly

_____

[10] Although, the PCRA court analyzed this issue on a different theory than the one alleged by Appellant in his *pro se* PCRA and in his appellate brief, we find support for the PCRA court's ultimate conclusion in the record and affirm on that basis. **See Commonwealth v. Rykard**, 55 A.3d 1177, 1183 (Pa.Super. 2012).

authenticated before being admitted. *See* Commonwealth's brief at 19-20. Also, Appellant has not identified any errors in the translations. *Id*. Additionally, the PCRA court points out that trial counsel introduced some of the at-issue exhibits and stipulated to the entry of the victim's translated statement that Appellant now challenges as inaccurately translated. Finally, counsel used these pieces of evidence in order to pursue the defense theory of the case, which was that the victim was fabricating allegations against Appellant because she was jealous of Appellant's other girlfriend and wanted sole custody of the children. PCRA Court Opinion, 7/19/18, at 56.

We discern no abuse of discretion in the PCRA court's decision to dismiss this claim. We find most persuasive the fact that Appellant has not identified any potential errors in the translations. Also, a review of the transcripts reveals that all of the challenged exhibits were either admitted by defense counsel, stipulated to by the parties, or properly authenticated by the Commonwealth before they were admitted. Further, Appellant's trial counsel, who is fluent in Spanish,[11] used many of the inconsistencies within these statements to Appellant's advantage. Accordingly, since Appellant has not persuaded us that the admission of these exhibits harmed him in any way, no relief is due.

_____

[11] At sidebar, trial counsel told the court that she speaks Spanish, before requesting that the court instruct the translator to translate word for word what the victim was saying, instead of "her best translation." N.T. Trial, 3/4/14, at 63-66.

Appellant has not met his burden of convincing us that the PCRA court's rulings were the product of an abuse of discretion or an error of law warranting relief from this Court. *See Commonwealth v. Miner*, 44 A.3d 684, 688 (Pa.Super. 2012). Therefore, we affirm the order denying his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2019